PERLEY ET AL. *v.* STATE OF NORTH CAROLINA.

ERROR TO THE SUPREME COURT OF THE STATE OF NORTH CAROLINA.

No. 251.  Submitted March 19, 1919.—Decided April 21, 1919.

To protect the watersheds held by cities for supplying water to their inhabitants from danger by fire is a governmental purpose, in the execution of which it is not arbitrary for a State, where there is reasonable apprehension of the danger, to require the owners of timber, upon cutting or removing it from land near to such watersheds (in this case within 400 feet), to remove or cause to be burned under proper supervision, the tops, etc., not desired to be taken for commercial or other purposes. P. 513.

Mere assertion that the presence of such refuse would be harmless, not a nuisance, etc., *held* not to countervail the judgment of the state courts, the legislative judgment implied in the act making the requirement, and common experience as to the danger of fires spreading from such accumulations. *Id.*

A statute making this requirement of individuals in favor of municipalities does not deny equal protection of the laws in failing to make similar requirements of municipalities for the protection of individuals. P. 514.

173 N. Car. 783, affirmed.

THE case is stated in the opinion.

*Mr. Julius C. Martin, Mr. Thos. S. Rollins* and *Mr. Geo. H. Wright* for plaintiffs in error:

The statute is unconstitutional and void:

(1) Because it is arbitrary and unreasonable, and the discrimination attempted has no reasonable relation to the object sought to be accomplished; because tree-tops, etc., lying on the land of the owner, 400 feet and less from the land of the City of Asheville, constituting its watershed, are absolutely harmless; they contain no element of injury or damage to anyone and could not by any possibility be construed into a nuisance.

(2) Because municipalities in North Carolina which own watersheds could protect them from fire by cleaning out fire lines on their own property. To require a property owner to clean up his own lands in order to protect the property of a city or town which is engaged in the furnishing of water to its inhabitants, is to deprive him of his property without due process of law and without just compensation.

(3) Because the statute is arbitrary, partial, and unconstitutional in that it does not bear equally upon all. It does not pretend to protect the property of plaintiffs in error, or other persons in like situation, from the acts of municipalities similar to those it condemns.

If the statute had been limited to lumbering operations and had applied only to persons engaged in the business of lumbering, there might have been more reason to sustain it, but it will be noted that this statute is broad and covers all classes of owners of timber trees and therefore embraces all persons who own timber within 400 feet of a city watershed and casts burdens on such persons which are unusual, heretofore unknown, discriminatory, and, as we insist, unconstituional.

*Mr. James S. Manning,* Attorney General of the State of North Carolina, and *Mr. Robert H. Sykes,* Assistant Attorney General of the State of North Carolina, for defendant in error.

Mr. Justice McKenna delivered the opinion of the court.

A statute of North Carolina provides that any person who owns land or standing timber on land within 400 feet of any watershed held or owned by any city or town for the purpose of furnishing the city or town water supply, upon cutting or removing the timber or permitting either, within 400 feet of the watershed, shall, within three months after cutting, or earlier upon written notice by the city or town, remove or cause to be burned under proper supervision all tree-tops, boughs, laps and other portions not desired to be taken for commercial or other purposes, within 400 feet of the boundary line of the watershed so as to leave such space of 400 feet free and clear of the designated parts required to be removed or burned and other inflammable material caused by or left from cutting the standing timber, so as to prevent the spread of fire from such cut-over area and the consequent damage to the watershed. A violation of the act is a misdemeanor.

Plaintiffs in error (we shall refer to them as defendants)

were indicted for violating. the act and upon being arraigned filed a motion to quash the indictment on the ground that the act was unconstitutional and void and in violation of the Constitution of the United States, and particularly the Fifth and Fourteenth Amendments thereof, in that the act abridged privileges and immunities of defendants as citizens of the United States, deprived them of their property without due process of law and denied them the equal protection of the laws. The motion was denied and defendants were put on trial before a jury which specially found that the City of Asheville owned about 16,000 acres of land having an outside boundary of twelve miles and held the land as a watershed; that defendants were owners of standing and fallen timber adjoining the watershed on the north about four miles and within 400 feet of the watershed but did not own the land upon which the timber stood and that the water did not drain from the timber, or the land upon which it stood, on to the watershed. And the jury found all other facts which brought defendants within the provisions of the act and made them violators of it. And the jury found the defendants guilty or not guilty as the court should determine the law to be upon the facts found.

Upon the special verdict the court adjudged defendants guilty and fined each $300 and costs. Upon appeal the Supreme Court of the State affirmed the judgment.

In considering the contention of defendants we may put to one side what property is or what its rights are, in the abstract. It and they necessarily are subject to some exertions of government.

What then is the case? The City of Asheville is the owner of and conducts a reservoir, and it may be presumed that other cities of the State are in like situation, and the State, by the law in question, seeks to protect their watersheds from damage or devastating fires. The purpose is governmental, but it is contended that the regulation of

the statute under review is too distant from the purpose
and is simply an arbitrary exercise of power. And this
as a certain proposition of law, having no other basis in
the record than that the forbidden litter of the cut-down
and removed timber is "absolutely harmless" and con-
tains "no element of injury or damage to any one" and
cannot "by any possibility be construed into a nuisance."
The assertion eludes exact estimation. "Tree-tops,
boughs, and laps" left upon the ground may not of them-
selves be a nuisance; but they may become dry, and the
more quickly and certainly so from the denudation of the
land of its trees, and therefore become a source of fires
and the perils and damage of fires. This was the con-
clusion of the courts below and, we may suppose, in
application to the Asheville watershed. The conclusion
is fortified by the judgment of the State expressed in the
statute, and, it may be, from experience in the State and
certainly from experience in other States, ignorance of
which we cannot feign. We are not able, therefore, to
yield to the contention of defendants that the statute is
not proportionate in its regulation nor that its application
to defendants' property is arbitrary and unconstitutional.

Nor do we find illegal discrimination in the statute.
The charge is based upon the contention that the statute
condemns acts committed by individuals "when if like
and similar acts be done by municipalities there is no
violation of the statute." Counsel again insists too much
upon the abstract. We concede the aphorism upon which
counsel relies that "the equal protection of the laws is a
pledge of the protection of equal laws." We, on March
24th last, by an almost prescience of the contention now
based on it, defined its extent and declared that the
Fourteenth Amendment, which is the foundation of the
aphorism, does not regard the impracticable, and that
distinction may be made by legislation between objects
or persons, and that the power of the State "'may be

determined by degrees of evil or exercised in cases where detriment is specially experienced.' *Armour & Co.* v. *North Dakota*, 240 U. S. 510, 517." Moreover, we pointed out that "the deference due to the judgment of the legislature on the matter" had "been emphasized again and again. *Hebe Co.* v. *Shaw*, 248 U. S. 297, 303." *Dominion Hotel* v. *Arizona, ante*, 265.

Necessarily the legislature of the State did not think, and the courts below did not think, that individuals and municipalities stood in the same relation to the evil aimed at or that a public body charged with the care of the interests and welfare of the people would need the same restraint upon its action as an individual, or be induced to detrimental conduct.

*Judgment affirmed.*