## HOLLY HILL CITRUS GROWERS' ASS'N et al. v. HOLLY HILL FRUIT PRODUCTS, Inc.

### No. 7367.

Circuit Court of Appeals, Fifth Circuit.

Jan. 30, 1935.

Robert R. Milam, of Jacksonville, Fla., for appellants.

A. G. Turner and Harold C. Farnsworth, both of Tampa, Fla., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Looked at as the parties seem to have looked at it, the suit out of which this appeal grows is seen as a bitter, personal contest, conducted acrimoniously and with resulting exacerbation. Looked at simply as a legal controversy, it is seen to be merely a suit over trade-marks and their unfair use. It was heard below on a record made up of testimony taken upon an agreed reference to a master pro hac vice to take testimony and proof without findings of fact and law. It resulted there in a decree fully sustaining plaintiff-appellee's claims, and enjoining appellants from further infringement. Full findings of fact and conclusions of law were made and filed by the District Judge.[1]

---

[1] "Findings of Fact.

"(1) This case is one arising under the trade-mark laws of the United States.

"(2) Holly Hill Grove & Fruit Company, a Florida corporation, and the intervening defendant herein, purchased cer-

Appellants vigorously challenge the finding that appellee purchased from Holly Hill Grove & Fruit Company, one of the appellants, its business as a citrus fruit marketing company, its good will as such company, its trade-marks "Holly Hill Groves" encircled by a wreath of holly leaves and berries, and "Holly Hill" printed in large square letters. It challenges, too, the finding that the appellee truly applied for and lawfully obtained registration of the trademark "Holly Hill Groves" with the knowledge of the president of appellant, and without objection from that company. Appellants insist that these findings are contrary to the overwhelming weight of the credible oral evidence. They insist, too, that they are so inconsistent with the corporate records of the two companies as to be in effect contradicted by them. It is in attack upon these findings that all of appellants' assignments and contentions have been made.

tain lands in the vicinity of and around the town of Davenport, Florida, about 7,-000 acres of land. A part of the land was planted in citrus groves, some of which were bearing. During the years 1923 to 1927 the business and activity of this corporation was the development and sale of citrus groves. The fruit produced by the bearing groves and the groves just beginning to bear was sold by the Holly Hill Grove & Fruit Company through certain marketing companies doing business in the surrounding territory with the exception of a few boxes of select fruit which the Holly Hill Grove & Fruit Company sold through its land sales agents each year, the purpose of the sales being to further the sale of groves. For use on these boxes of fruit sold by its land sales agents, the Holly Hill Grove & Fruit Company had two trademarks, namely the words 'Holly Hill Groves' encircled by a wreath of holly leaves and berries, and the words 'Holly Hill' printed in large square letters. The fruit sold by marketing companies, doing business in the surrounding territory was shipped under the trademarks of the various companies.

"The Holly Hill Grove & Fruit Company by its sales of fruit, by its land sales agents and a few boxes each year which it sold for grove owners, built a small marketing business with a certain amount of good will as a marketing company.

"In the year 1927, the Holly Hill Grove & Fruit Company, through its officers and agents, formed the Holly Hill Fruit Products, Incorporated, the plaintiff herein. The purpose of the Holly Hill Fruit Products, Incorporated, was to market citrus fruit from the groves in the area around Davenport, Florida; this area being the main place of development by the Holly Hill Grove & Fruit Company and Davenport being its main place of business.

"The directors of the Holly Hill Fruit Products, Incorporated, were, in the most part, grove owners to whom the Holly Hill Grove & Fruit Products had sold groves. The officers of the new company were officers or employees of the Holly Hill Grove & Fruit Company. The Holly Hill Fruit Products, Incorporated, was organized to have an executive committee, which committee directed the operations and policies of the corporation. The members of this committee, at the time of its formation, were L. A. Wilson, President of the Holly Hill Grove & Fruit Company, and Vice-President of the Holly Hill Fruit Products, Incorporated; Frank W. Crisp, Vice-President of the Holly Hill Grove & Fruit Company, and President of the Holly Hill Fruit Products, Incorporated, and J. A. Watkins, Secretary and General Manager of Holly Hill Fruit Products, Incorporated.

"The Holly Hill Grove & Fruit Company advertised to grove owners and prospective grove owners that the new company was to be the marketing company of grove owners who bought groves from the Holly Hill Grove & Fruit Company. In actuality the Holly Hill Grove & Fruit Company intended to control the Holly Hill Fruit Products, Incorporated, through its officers, who held offices or positions in the Holly Hill Grove & Fruit Company.

"Soon after the formation of the Holly Hill Fruit Products, Incorporated, it purchased from the Holly Hill Grove & Fruit Company, its business as a citrus fruit marketing company, its good will as such a company, its trademarks, 'Holly Hill Groves' encircled by a wreath of holly leaves and berries and 'Holly Hill' written in large square letters. The sale was consummated by J. A. Watkins for the Holly Hill Fruit Products, Incorporated, and Frank W. Crisp, for Holly Hill Grove & Fruit Company. The consideration for the sale was that Holly Hill Fruit Products, Incorporated, purchased from the Holly Hill Grove & Fruit Company all its stock of obsolete materials that it had from its business as a marketing company and to take over the business of marketing fruit of grove owners.

"The materials were purchased and paid for and Holly Hill Fruit Products, Incorporated, started marketing the fruit of grove owners as soon as possible.

"The sale was completely executed without a written agreement. The Holly Hill Grove & Fruit Company turned over to

Such marshaling of authorities as there is, such reliance on this and on that case, is in support of this attack on the fact findings. Appellants recognize, as appellee does, that the case at last is one purely of fact; that the principles of law which control its determination have long been clearly settled; and that cited cases are of importance only as guides to and checks upon a correct determination of facts. The determining principles are excellently stated in United States Ozone Co. v. United States Ozone Co. (C. C. A.) 62 F.(2d) 881; there is a good statement of them in Woodward v. White Satin Mills Corporation (C. C. A.) 42 F.(2d) 987, and in Pulitzer Pub. Co. v. Houston Printing Co. (D. C.) 4 F.(2d) 924.

Briefly summed up as applied to this case, they are: The law of trade-marks is a part of the law of unfair competition; trademarks follow; they are incidents and appurtenances to businesses and trades. They have no independent existence; they may not be sold in gross. They attach to and pass with the good will of a business, and, as appurtenant to it, they are freely and easily sold. No particular form of words is necessary to transfer them; they inhere in and pass with good will.

■ Appellee pitched its case below, it pitches it here, on these principles. It insists that not separate and independent from, but in connection with, and as a part of, the packing and marketing business and

the Holly Hill Fruit Products, Incorporated, all its files of fruit customers and all other files concerning its past marketing operations.

"On the 22nd day of July, 1929, Holly Hill Fruit Products, Incorporated, applied for registration of its trademark, 'Holly Hill Groves' encircled by a wreath of holly leaves and berries. At the time of these applications L. A. Wilson, President of the Holly Hill Grove & Fruit Company, was a member of Holly Hill Fruit Products, Incorporated, executive committee, and knew of these applications.

"The application for the registration of these trademarks contained the statement that the trademarks had been previously used by the Holly Hill Fruit Products, Incorporated, and its predecessor, Holly Hill Grove & Fruit Company. The Holly Hill Fruit Products, Incorporated, succeeded the Holly Hill Grove & Fruit Company in its fruit marketing business thus making the Holly Hill Grove & Fruit Company its 'Predecessor.'

"Certificates of registration were issued for these trademarks without objection from the Holly Hill Grove & Fruit Company. Certificate No. 265592 was issued by the Commissioner of Patents of the Patent Office of the United States on the 31st day of December, 1929, for the trademark 'Holly Hill' and on the 15th day of April, 1930, Certificate Number 269586 was issued by the Commissioner for the trademark 'Holly Hill Groves' encircled by a wreath of holly leaves and berries.

"So far as was known to the Holly Hill Fruit Products, Incorporated, there was no fruit marketing business done by Holly Hill Grove & Fruit Company under the trademarks of Holly Hill Fruit Products, Incorporated from the time of the sale mentioned until the citrus fruit season of 1931–1932 when Holly Hill Citrus Growers Association Inc. the defendant herein,

began selling under these trademarks as agent for the Holly Hill Grove & Fruit Company.

"From the season 1931–1932 the Holly Hill Citrus Growers Association Inc. has been selling greater quantities of fruit under these brands each year. The fruit sold by this company under these trademarks and the fruit sold by the Holly Hill Fruit Products, Incorporated, is listed on fruit auctions as "Holly Hill" thus confusing the public and causing irreparable and continuing damage to the Holly Hill Fruit Products, Incorporated.

"Conclusions of Law. (1) The Court concludes that it has jurisdiction of this cause. (2) A sale of the Holly Hill Grove & Fruit Company's business as a citrus fruit marketing company, its good will as such company, its trademarks 'Holly Hill Groves' encircled by a wreath of holly leaves and berries, and 'Holly Hill' was made for good, sufficient and valuable consideration to Holly Hill Fruit Products, Incorporated. (3) The statements in the application for registration of the trademarks sold to Holly Hill Fruit Products, Incorporated, were true and the registration of the trademark was obtained without fraud or misrepresentation. (4) The Court further concludes that the use by the Holly Hill Grove & Fruit Company, or its agent, The Holly Hill Citrus Growers Association, Inc. of the trademark 'Holly Hill Groves' with the wreath design, or 'Holly Hill' or any simulation or colorable imitation thereof, has infringed the rights of the Holly Hill Fruit Products, Incorporated, in the trademarks and that the Holly Hill Fruit Products, Incorporated, is entitled to a permanent injunction restraining Holly Hill Grove & Fruit Company and Holly Hill Citrus Growers Association, Inc. from the use of the trademark or any colorable imitation or simulation thereof."

the good will which it acquired from appellant Holly Hill Grove & Fruit Company, it acquired the trade-marks in question. It insists that the Grove & Fruit Company may not now undo and unsay what it did and said when creating and launching the Fruit Products Company, that that company was "organized to take over and conduct the fruit marketing business which the Grove & Fruit Company had theretofore conducted under its distinguishing trade-marks, 'Holly Hill' and 'Holly Hill Groves.'" It insists that the attacked findings are overwhelmingly sustained by the oral evidence in the case, given by those who were managing and conducting the business of the two companies when the Fruit Products Company was formed, and the sale of the fruit marketing business was effected. It insists, further, that all of this oral evidence aside, the undisputed facts, that the Holly Hill Grove & Fruit Company promoted, organized, and named the Fruit Products Company "Holly Hill," that it not only advertised that the Fruit Products Company would, and authorized it to, ship under "Holly Hill" brands, but it turned over to it its marketing business and good will, and all of the physical assets it had connected with it, furnish conclusive and irrebuttable proof that the Grove & Fruit Company intended to and did make Fruit Products Company successor to its business and good will, including its trade-marks.

We agree with appellee that there is, there can be, no dispute in the purposes for which the appellee, Holly Hill Fruit Products, Inc., was brought into existence and named, by appellant Holly Hill Grove & Fruit Company. It was promoted and organized by that company, primarily an orchard development company, for the purpose of aiding in the development of its properties. It was a part, and an effective part, of its selling machinery. The purpose and scheme of organization was stated to be, it was, to have the Fruit Products Company ultimately owned by those who would buy and own the land, a kind of co-operative through which the products of the groves the fruit company was selling, could be marketed and sold by the owners, whom by this and other inducements they could get to buy. Mr. Wilson, the dominant figure in Holly Hill Grove & Fruit Company and in creating and using the Holly Hill trade-marks, was the dominant figure in promoting and organizing the Holly Hill Fruit Products Company.

The managing officers of the two companies were, in the beginning, substantially the same. Advertisements, inspired editorials, circulars, sales literature, all emphasized one fact, that this company had been organized by the parent company to take over the marketing end of its business, and that it would handle and sell fruit from the orchards around Davenport under the Holly Hill labels and brands, not for one year or two years, not while the two companies were under the same management, but as a permanent business. This made good sales talk in handling the groves, and it cannot be doubted that by forming the corporation with the name "Holly Hill," a name having no connection whatever with the place where it was to do business, Davenport, it was intended to represent that it was formed to, and would, sell the product of the Davenport groves for the owners, who should buy them, under the Holly Hill brand. After its organization there was a directors' meeting, at which the investiture of the Holly Hill Fruit Products Company with, the divestiture of the Grove & Fruit Company of the properties and good will of, the fruit marketing business of the parent company, was completed. At that meeting the Fruit Products Company authorized the payment to the Grove & Fruit Company of a cash consideration for, and there was delivered to it as a part of the sale of the business, trade-marks, and good will, all of the labels, the die, and other physical properties the Grove & Fruit Company had been using in connection with the marketing end of its business. Since its organization, the Fruit Products Company, shipping its fruit under Holly Hill marks and brands, some of which it caused to be registered, has built up quite a business under that name. This went on without protest of any kind from appellants, until more than four years after the use had begun, and more than two years after appellant had stopped shipping fruit through appellee.

Appellant makes a good deal out of the fact that nothing is said in the minutes or in any writing about the sale of the trade-marks. We do not think this at all significant when the positive testimony of witnesses, who were in a position to know, that the whole business was taken over, is considered in the light of the undisputed facts as to the circumstances and conditions under which the Fruit Products Company was promoted, organized, and launched. There is the fact, too, that if the testimony of

Watkins and Crisp, on whose oral testimony appellee mainly relies, is interested, the testimony of Wilson and his directors is too. There is also the further fact on the side of plaintiff that Huffaker, the attorney for both companies when the arrangements in question were made, was not permitted to testify over the objection of privilege, urged by appellants. But apart from all these there are the dominant facts of appellee's promotion, its organization, naming, and launching by appellant, the advertisements and literature appellant sent out, the inspired editorials it caused to be written, and its long silence in the face of appellee's action in registering the trademarks and in marketing and shipping under them, whose significance cannot be overlooked or denied.

There is a kind of evidential estoppel which, though it may not amount to a complete estoppel in pais, is raised when persons who have spoken or acted one way under one set of circumstances, and with one objective in mind, undertake under other circumstances and when their objective has changed, to testimonially give a different color to what they formerly said and did. We think that principle applies here. When the company was being organized and floated, when persons were being induced to take stock in it, groves were being sold, settlers were being brought in, and business was being boomed, these in effect, if not in words, were the representations made: "The Holly Hill Fruit Products Company is being organized to take over our shipping business; it will ship under our brand, succeeding to all the marketing activities; it will promote and further all those activities which before its organization, the Grove & Fruit Company was carrying on. Take stock in the company, foster it, promote it, build it up to be a great marketing company under the 'Holly Hill' brand. We have named it 'Holly Hill Fruit Products Company' because, though it will be located at Davenport, and will have nothing to do with Holly Hill geographically, its business will be, shipping under our 'Holly Hill' brands. It has taken over our business, our good will and our brands. Join it, invest in it, make it your company." Now, when Crisp and Wilson have split up, when engaged in violent disputes with one another, they have separated and gone their different ways in bitterness and distrust; when, because of that dispute, Wilson's company is not shipping through appellee, and when, most important of all, the stock of the Holly Hill Fruit Products, Inc., is not owned or controlled by the Wilson interests, but by others, brought into it through his promotional and organization activities, he cannot now say: "What I really intended you to do was to take stock in a company which would ship under Holly Hill labels as long as I was pleased with the management; as long as it was our agent." He must say now, as he in effect said then: "This is the Holly Hill Fruit Products Company; it ships under Holly Hill brands; it was organized to take over the Holly Hill marketing business and brands; it owns them." If the Holly Hill Grove & Fruit Company desires now to re-engage in the business of packing and shipping fruit, it may of course do so; but it must do it not under the brands and marks it gave the Holly Hill Fruit Products Company when it created it. It must take other brands and marks.

It was these things, without doubt, which caused the District Judge to take the view he took. It is these things which compel us to sustain that view.

The decree was right; it is affirmed.