**Sharron A. FRONTIERO and Joseph Frontiero, Plaintiffs,**

**v.**

**Melvin R. LAIRD, as Secretary of Defense, his successors and assigns, et al., Defendants.**

**Civ. A. No. 3232–N.**

United States District Court,
M. D. Alabama, N. D.

April 5, 1972.

See also, D.C., 327 F.Supp. 580.

Morris S. Dees, Jr., and Joseph J. Levin, Jr., Montgomery, Ala., for plaintiffs.

Ira DeMent, U. S. Atty. for the M. D., Montgomery, Ala. and Asst. U. S. Attys., F. E. Leonard, Jr., and Kenneth E. Vines, and L. Patrick Gray, Asst. Atty. Gen., Civ. Div., Dept. of Justice, Washington, D. C., and Civ. Div. Attys., Harland F. Leathers and Jeffrey Axelrod, for defendants.

Before RIVES, Circuit Judge, and JOHNSON and McFADDEN, District Judges.

## OPINION AND JUDGMENT

RIVES, Circuit Judge, and McFADDEN, District Judge:

Plaintiffs attack the constitutionality of 37 U.S.C. §§ 401, 403, and 10 U.S.C. §§ 1072, 1076, insofar as these statutes require different treatment for male as opposed to female members of the uniformed services, and seek to require the defendants to cause plaintiff Lt. Sharron A. Frontiero to receive the same quarters allowance and medical and dental benefits for her spouse as a male member would receive for his spouse.

"Dependent" is defined in 10 U.S.C. § 1072 and 37 U.S.C. § 401. The statutes provide that dependents of any member of the uniformed services be furnished medical and dental care (10 U.S.C. § 1076) and that members with dependents receive an increased allotment for quarters (37 U.S.C. § 403). Under the statutes, members are allowed to designate a particular person as a dependent in the following instances:

(1) A married male member may claim his wife and any unmarried, legitimate, minor children regardless of whether those persons are dependents in fact.

(2) A married female member may claim her husband and any unmarried, legitimate, minor children upon a showing that they are in fact dependent on her for more than one-half of their support, except that, as to medical and dental care a female member may claim such minor children as dependents without regard to whether they are in fact dependent.

(3) Upon a showing of actual dependency any member may claim adult children, parents, and parents-in-law who are incapable of self support because of mental or physical incapacity.

The crucial difference between the treatment of male and of female members is that with respect to quarters' allowance and medical benefits for the spouse of a female member there must be a showing of actual dependency, whereas this showing is not required for male members.

Plaintiffs seek a declaration that this differentiation is unconstitutional and constitutes a discrimination in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution; a permanent injunction against the enforcement of these provisions with respect to them and members of their class; and an award of back pay for dependency allowances previously denied Lt. Frontiero.

This case is before the Court for decision upon an agreed statement of facts consisting of a stipulation filed May 20, 1971, and an amended stipulation filed May 24, 1971.

Plaintiff, First Lieutenant Sharron A. Frontiero, USAF, a physical therapist assigned to Maxwell Air Force Base Hospital, Maxwell Air Force Base, Ala-

bama, is married to plaintiff Joseph Frontiero, a full-time student at Huntingdon College, Montgomery, Alabama. Joseph Frontiero's living expenses, including his share of household expenses total approximately $354.00 per month. He receives $205.00 per month in veterans' benefits. It is clear, therefore, that Joseph Frontiero is not dependent on Lt. Sharron A. Frontiero for more than one-half of his support. Accordingly, Lt. Frontiero's requests for quarters allowance and medical benefits have been denied. Before reaching the merits of plaintiffs' claim, two preliminary matters must be decided.

First, defendants contend that plaintiffs have no standing to maintain this action because Joseph Frontiero has previously claimed Sharron A. Frontiero as a dependent for purposes of certain veterans' benefits. Defendants rely on Fahey v. Mallonee, 332 U.S. 245, 255, 67 S.Ct. 1552, 1557, 91 L.Ed. 2030 (1947), where the United States Supreme Court said:

> . . . . It is an elementary rule of constitutional law that one may not "retain the benefits of the Act while attacking the constitutionality of one of its important conditions." United States v. [City and County of] San Francisco, 310 U.S. 16, 29 [, 60 S.Ct. 749, 756, 84 L.Ed. 1050.] As formulated by Mr. Justice Brandeis, concurring in Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 348 [, 56 S.Ct. 466, 483, 80 L.Ed. 688,] "The Court will not pass upon the constitutionality of a statute at the instance of one who has availed himself of its benefits."

In *Fahey,* the conflicting claims involved only one Act. Defendants contend, however, that the statutory schemes here in question, and the veterans' benefits provisions under which Mr. Frontiero claimed Lt. Frontiero as a dependent, are sufficiently similar in nature that the announced rule in *Fahey* ought to apply.

The provisions under which Joseph Frontiero receives his veterans' benefits are found in 38 U.S.C. § 1651 et seq. Section 1651 provides:

> The Congress of the United States hereby declares that the education program created by this chapter is for the purpose of (1) enhancing and making more attractive service in the Armed Forces of the United States, (2) extending the benefits of a higher education to qualified and deserving young persons who might not otherwise be able to afford such an education, (3) providing vocational readjustment and restoring lost educational opportunities to those service men and women whose careers have been interrupted or impeded by reason of active duty after January 31, 1955, and (4) aiding such persons in attaining the vocational and educational status which they might normally have aspired to and obtained had they not served their country.

The statutory scheme under which Joseph Frontiero receives veterans' benefits is part of Chapter 34 which is denominated as "Veterans' Educational Assistance" and which is in turn a part of Title 38, entitled "Veterans' Benefits."

Title 37 U.S.C., wherein lie the schemes here challenged by Lt. Frontiero, is styled "Pay and Allowances of Uniformed Services." Title 37 does not contain an elaborate statement of purpose, but it is clear that Chapter 7, of which Section 403 is a part, is intended to confer certain benefits on current members of the uniformed services. And, Title 10 U.S.C. § 1071 provides:

> The purpose of sections 1071–1087 of this title is to create and maintain high morale in the uniformed services by providing an improved and uniform program of medical and dental care for members and certain former members of those services, and for their dependents.

The statute under which Joseph Frontiero receives $205.00 per month is primarily designed to provide assistance to veterans, although one of its stated

purposes is to enhance service in the armed forces. On the other hand, 37 U.S.C. § 403 and 10 U.S.C. § 1072 concern benefits to be bestowed upon present and certain former members of the uniformed services, and the stated purpose in Section 1071 is the creation and maintenance of high morale among present members. Therefore, we conclude that the provisions of 38 U.S.C. § 1651 et seq., relating to veterans' educational benefits, and 37 U.S.C. § 403 and 10 U. S.C. § 1072, relating primarily to benefits for present members, are sufficiently distinct as to render the *Fahey* doctrine inapposite.

Second, defendants ask this Court to invoke an estoppel doctrine, relying primarily on Holly Hill Citrus Growers' Ass'n v. Holly Hill Fruit Products, Inc., 75 F.2d 13, 17 (5th Cir. 1935), where the Court said:

> There is a kind of evidential estoppel which, though it may not amount to a complete estoppel in pais, is raised when persons who have spoken or acted one way under one set of circumstances, and with one objective in mind, undertake under other circumstances and when their objective has changed, to testimonially give a different color to what they formerly said and did.

Defendants contend that because Joseph Frontiero has claimed Sharron Frontiero as a dependent for the veterans' benefits, plaintiffs are estopped from claiming him as her dependent under the military pay and allowances statutes.

■ We do not agree. The amount of the educational assistance allowance for veterans is based upon the number of dependents of the recipient. 38 U.S.C. § 1682. The definition of "dependent" in the Veterans' Benefits Act (38 U.S.C. § 1652) includes the wife of an eligible veteran without regard to her dependence in fact. When Joseph Frontiero claimed his wife as a dependent for the veterans' benefits, he was not warranting her dependence in fact. Rather, he was merely certifying that he was married and that, by the terms of the statute, he therefore had a dependent. In this case plaintiffs ask that the presumption of dependency be extended to female members claiming their husbands as dependents for purposes of medical benefits and quarters' allotment. If such relief were granted the effect would be to excise any notion of dependency in fact from the statutory scheme. As such the force of the statute would be to give additional pay to all married members without regard to the actual dependency of their spouses. In that light there would be nothing inconsistent in Joseph Frontiero's claiming Sharron as a dependent while at the same time Sharron claimed Joseph. Thus, we conclude that plaintiffs have not taken such an inconsistent position that they are estopped by the *Holly Hill* doctrine.

Inasmuch as we reject the argument that plaintiffs lack standing and are estopped to challenge the provisions under scrutiny, the case is ripe to be disposed of on the merits.

Plaintiffs point out that a male member may claim his wife without proving her actual dependency, while a female member must prove such in order to claim her husband. At first blush, then, the statute seems to draw a classification entirely on the basis of sex. Such is not the case. Rather than focus attention solely to the different treatment afforded male and female members claiming their respective spouses, we must examine the over-all statutory scheme. A conclusive presumption of dependency is extended in the following instances:

(1) *To male members* claiming spouses and unmarried, legitimate, minor children; and

(2) *to female members* claiming unmarried, legitimate, minor children for purposes of medical and dental benefits.

On the other hand, dependency in fact must be shown:

(1) *By male members* claiming adult children, parents, and parents-in-law; and

(2) *by female members* claiming anyone other than an unmarried, legit-

imate, minor child for medical and dental benefits.

■ Thus, on the whole the availability of the presumption does not turn exclusively on the basis of the member's sex but rather on the nature of the relationship between the member and the claimed dependent.[1] In some circumstances male and female members are afforded benefit of the presumption. In others no member can utilize the presumption. As such, this Court is of the view that the statutory scheme as a whole does not differentiate invidiously on the basis of sex. Perforce, then, there is no abridgment of the Constitution.

Yet even if we were to view this case in the narrow context invited by plaintiffs' approach, viz., the different treatment accorded a male member claiming his wife as a dependent and a female member claiming her husband, we would uphold the statute. Before moving to that discussion, however, it is necessary to clarify the standards by which we judge the statute.

■ An Act of Congress carries with it a strong presumption of constitutionality and places the burden upon the challenging party to prove the unconstitutionality of the statute at issue. See McDonald v. Board of Election Commissioners, 394 U.S. 802, 808–809, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969); McGowan v. Maryland, 366 U.S. 420, 425, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). The Due Process Clause of the Fifth Amendment, on which this challenge is based, bars federal legislation embodying a baseless classification. Galvan v. Press, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911 (1954). Undoubtedly there is much similarity between the equal protection test which

courts employ in determining the validity of a state statute and the due process test which is utilized in evaluating a federal statute. Indeed, it seems sound to say that if a statute comports with notions of equal protection it also satisfies the requisites of substantive due process. And in at least two cases the Supreme Court has tested federal statutes in terms of the standards made applicable to state acts through the equal protection clause of the Fourteenth Amendment. NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937); District of Columbia v. Brooke, 214 U.S. 138, 29 S.Ct. 560, 53 L.Ed. 941 (1909). Thus, in determining the constitutionality of the statutory scheme which plaintiffs attack, this Court must ask whether the classification established in the legislation is reasonable and not arbitrary and whether there is a rational connection between the classification and a legitimate governmental end.[2] In making that judgment, the statute must be upheld "if any state of facts rationally justifying it is demonstrated to *or perceived by* the courts." United States v. Maryland Savings-Share Insurance Corp., 400 U.S. 4, 6, 91 S.Ct. 16, 17–18, 27 L.Ed.2d 4 (1970) (challenge to a federal tax statute) (emphasis supplied).

The Supreme Court has recently enunciated the test for determining whether a classification squares with the Equal Protection Clause of the Fourteenth Amendment:

In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it

1. We have concluded that Congress chose to employ a presumption of dependency in certain instances for reasons of administrative and economic convenience. That such a justification is sound is treated *infra* p. 207.

2. In Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), the Supreme Court was faced with a challenge to a

state law which allegedly discriminated on the basis of sex. In stating the test by which to judge that statute, the Court did not require that it meet the compelling interest test, see Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), but rather that it satisfy the rational connection standard. Similarly, in this case we would be remiss in applying the compelling interest test.

does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." . . . . "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." . . . . "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it . . . ."

Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970).

■ In summary, the law is well-settled that a statutory classification, challenged as an unlawful discrimination, should be upheld if it has a rational basis.

The defendants contend that the statutory provisions here at issue do no more than establish a conclusive presumption that a married male member of the uniformed services has a dependent wife while requiring a married female member of the uniformed services to prove the dependency of her husband, a distinction which, they say, does no more than take account of facts which the courts and statistical studies evidence in no way discriminates [sic] against females, as such." It seems clear that the reason Congress established a conclusive presumption in favor of married service men was to avoid imposing on the uniformed services a substantial administrative burden of requiring actual proof from some 200,000 male officers and over 1,000,000 enlisted men that their wives were actually dependent upon them. The question presented here then is whether the price for enjoying this administrative benefit fails to justify the different treatment of married service women.

The legislative purpose of the provisions of 37 U.S.C. § 403 is to reimburse

members of the uniformed services for the expense of furnishing shelter to their dependents. See Adams v. United States, 65 F.Supp. 86, 106 Ct.Cl. 209 (1946). Similarly, the object of 10 U.S.C. § 1076 is to provide medical and dental care to dependents of members of the uniformed services. The classification which establishes a conclusive presumption in favor of married service men claiming wives allows the uniformed services to carry out these statutory purposes with a considerable saving of administrative expense and manpower. Congress apparently reached the conclusion that it would be more economical to require married female members claiming husbands to prove actual dependency than to extend the presumption of dependency to such members.[3] Such a presumption made to facilitate administration of the law does not violate the equal protection guarantee of the Constitution if it does not unduly burden or oppress one of the classes upon which it operates. See Adams v. City of Milwaukee, 228 U.S. 572, 33 S.Ct. 610, 57 L.Ed. 971 (1913). "[L]egislation may impose special burdens upon defined classes in order to achieve permissible ends." Rinaldi v. Yeager, 384 U.S. 305, 309, 86 S.Ct. 1497, 1499, 16 L.Ed.2d 577 (1966) (dictum). Nothing in the instant statutory classification jeopardizes the ability of a female member to obtain the benefits intended to be bestowed upon her by the statutes. The classification is burdensome for a female member who is not actually providing over one-half the support for her claimed husband only to the extent that were she a man she could receive dependency benefits in spite of the fact that her spouse might not be actually dependent, as that term has been defined by Congress. In other words, the alleged injustice of the distinction lies in the possibility that some married service men are getting "windfall" payments, while married service women are

---

3. It should be remembered that for purposes of medical and dental benefits the presumption of dependency is extended to a female member claiming any unmarried minor, legitimate children. And on the other hand a male member must prove actual dependency when he claims adult children, parents, or parents-in-law who by reason of incapacity are unable to support themselves.

denied them. Sharron Frontiero is one of the service women thus denied a windfall.

■ All dependency benefits are unquestionably valuable, windfalls are not, but we are of the opinion that the incidental bestowal of some undeserved benefits on male members of the uniformed services does not so unreasonably burden female members that the administrative classification should be ruled unconstitutional. Under the stipulated facts, a contrary finding would be unjustifiably broad; it would necessarily be predicated on the reasoning that any classification established to enhance administration of the laws must operate with complete accuracy, that is, without providing any windfalls that are not equally available to members of all classes. The dilemma such a sweeping rule would produce is illustrated dramatically in the instant situation. The Court would be faced with a Hobson-like choice in fashioning a remedy: either strike down the conclusive presumption in favor of married service men, forcing the services to invest the added time and expense necessary to administer the law accurately, or require the presumption to be applied to both male and female married members, thereby abandoning completely the concept of dependency in fact upon which Congress intended to base the extension of benefits.

But the Congress is under no such strict constitutional mandate as it attempts to organize and supervise an efficient and beneficent national government:

> A classification having some reasonable basis does not offend [equal protection] merely because it is not made with mathematical nicety or because in practice it results in some inequality.

Morey v. Doud, 354 U.S. 457, 463, 77 S. Ct. 1344, 1349, 1 L.Ed.2d 1485 (1957), *quoting* Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78–79, 31 S.Ct. 337, 55 L.Ed. 369 (1911). See Helvering v. Lerner Stores Corp., 314 U.S. 463, 62 S.Ct. 341, 86 L.Ed. 343 (1941). Nor does the equal protection guarantee of the Constitution steadfastly demand the impracticable. Perley v. North Carolina, 249 U.S. 510, 39 S.Ct. 357, 63 L.Ed. 735 (1919). *Accord,* Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Similarly, due process does not command absolute equality.

This is not to say that if plaintiffs could prove that the rational basis—administrative and economic convenience—did not exist due process would nevertheless be satisfied. Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943). But the plaintiffs here have not come close to proving such a state of facts. There is no evidence before this Court proving that so many male members are in fact dependent on their wives as to make it advisable to deny male members the presumption of dependency. Nor is there proof that so many female members have dependent husbands as to justify extending the benefit of the presumption to them. We take no position on the effect of such a factual showing, particularly in light of our above-stated rationale that the statutory scheme considered as a whole does not differentiate invidiously on the basis of sex, but merely point out that the absence of such proof weakens plaintiffs' case.

Moreover, the result we here reach is clearly in harmony with the recent Supreme Court decision in Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), to strike down, as violative of the Equal Protection Clause of the Fourteenth Amendment, an Idaho statute which discriminated against women. The statute there in question established a conclusive presumption that the father of a deceased child is more suitable than the mother to serve as administrator of the child's estate. The Supreme Court held that such a classification had no lawful justification:

> Clearly the objective of reducing the workload on probate courts by eliminating one class of contests is not without some legitimacy. The crucial

question, however, is whether § 15–314 advances that objective in a manner consistent with the command of the Equal Protection Clause. We hold that it does not. To give a mandatory preference to members of either sex over members of the other, merely to accomplish the elimination of hearings on the merits, is to make the very kind of arbitrary legislative choice forbidden by the Equal Protection Clause of the Fourteenth Amendment; and whatever may be said as to the positive values of avoiding intrafamily controversy the choice in this context may not lawfully be mandated *solely* on the basis of sex.

*Id.* at 76, 92 S.Ct. at 254 (emphasis supplied). As we have noted the classification here at issue is not drawn solely on the basis of sex, as was the case in *Reed*. Second, while there is arguably some similarity between the administrative advantage of avoiding probate hearing and the administrative benefit of not having to determine the actual dependency of over a million service wives, there is a significant qualitative distinction. In *Reed* there was a statutory presumption which had no relation to the statutory purpose of selecting the best qualified administrator. The effect was to exclude certain qualified females from serving as administrators, whereas the classification presented here does not exclude qualified female members. They merely have to show actual dependency.

This Court would be remiss if it failed to notice, lurking behind the scenes, a subtler injury purportedly inflicted on service women as a subclass under these statutes. That is the indignity a woman may feel, as a consequence of being the one left out of the windfall, of having to traverse the added red tape of proving her husband's dependency, and, most significantly, of being treated differently. The Court is not insensitive to the seriousness of these grievances, but it is of the opinion that they are mistaken wrongs, the result of a misunderstanding of the statutory purpose. The classifications established by these statutes are purely administrative and economic ones, which are only based in part on sex. There is no reason to believe that the Congress would not respond to a significant change in the practical circumstances presumed by the statutory classification or that the present statutory scheme is merely a child of Congress' "romantic paternalism" and "Victorianism." See Weeks v. Southern Bell Telephone & Telegraph Co., 408 F.2d 228, 236 (5th Cir. 1969).

Having concluded that the statutory scheme on a whole is not one which classifies on the basis of sex and that there is a rational basis for the different treatment accorded male and female members in the narrow context of their attempt to claim spouses, we are compelled to the conclusion that the challenged statutes are not in conflict with the Due Process Clause of the Fifth Amendment and that they are in all respects constitutional. The relief prayed for is therefore denied.

JOHNSON, District Judge (dissenting):

Since the majority depicts this case as it does, the conclusion it reaches is not only easy, it is foregone. However, I am in basic disagreement with the majority's characterization of this litigation and the judicial approach which is thus required.

As an initial point, I take issue with the majority's conclusion that the classification under attack here is not based solely on sex. The majority says that one cannot look merely to the challenged provisions; rather the entire statutory scheme must be examined. Since in some other areas of the statutory scheme men and women are treated equally, the majority argues that the scheme as a whole is acceptable. But simply because a series of related statutes is sexually nondiscriminatory does not necessarily mean that the part of the statutes here being challenged is nondiscriminatory. The fact that the dependency of minor children for purposes of medical and dental care, for example, is determined equally for men and women has nothing to do

with whether the distinction made between men and women with regard to the dependency of their spouses is constitutional.

This Court recognizes that the challenged statutes and regulations are part of a comprehensive statutory matrix. This is so whether the provisions were passed simultaneously or were enacted intermittently over a long period of time. Yet the fact that those provisions which differentiate between men and women are part of such a statutory framework does not *ipso facto* rid those distinctions of constitutional infirmity. To emphasize, because a statute is constitutional in one respect does not preclude an examination into whether some other facet is constitutional. In other words, the majority's excursion into other aspects of these statutes is irrelevant to the issue in this case.

The plaintiffs' case deals solely with the precise question of whether Congress may legitimately distinguish between men and women in the manner in which their spouses' dependency is established. Rather than taking the traditional judicial approach of narrowing the issue, the majority expands the context of this case all out of proportion to the plaintiffs' complaint. Consequently, the majority's approach is not only illogical but is contrary to established notions of judicial perspective.

The majority further concludes that even within the narrow confines of plaintiffs' actual case, the challenged differentiation between men and women is constitutionally permissible. This determination is premised on a finding of "administrative convenience." Without consideration of the propriety of disposing of an important constitutional issue on a basis which no party has advanced and with regard to which we have no proof, I am forced to conclude that this second argument is as faulty as the first.

The majority argues that the reason for providing a conclusive presumption of dependency for males was a desire by Congress to avoid the administrative imbroglio of requiring actual proof from some 200,000 officers and over 1,000,000 enlisted men that their wives were actually dependent upon them. Yet plaintiffs in this case do not attack nor do they seek to end the presumption in favor of males. Rather, they take issue with the statutes' requirement that they and members of their class demonstrate actual dependency. Plaintiffs would probably concede that there is some administrative convenience in granting all married servicemen the conclusive presumption that their spouses are dependent. But except to the extent that it is necessary to illustrate the disparity of treatment between men and women, plaintiffs have demonstrated no concern whatever for the statutes' treatment of males. It is the discriminatory application of the statutes to females that is the crux of this action.

If it is administratively convenient to provide a conclusive presumption for men, it is inconsistent to require a demonstration of dependency in fact for women. The administrative convenience, supposed or real, in providing men with a conclusive presumption of dependency is simply irrelevant to this case. The question is whether it is administratively convenient to require women to demonstrate dependency in fact. From the majority's reasoning, the answer must be clearly in the negative because it is easier just to grant the presumption. Thus, on the strength of the majority's logic, there can be no rational basis.

It may be that the majority attaches a broader meaning to administrative convenience than simply the ease or cost of distribution of benefits. It appears that the majority would include the denial of benefits to women whose husbands are not dependent in fact in the determination of costs to the Government. Yet it seems incongruous to say that the justification for denying the benefits is that it is cheaper not to give them. That reasoning begs the question of whether there is a rational basis for distinguishing between men and women. If all that is required to uphold a con-

gressional enactment is the conclusion that it is more economical to deny benefits than to extend them, then any statutory scheme can be established and no disqualified group can complain.

Even assuming the correctness of the majority view that administrative convenience may properly include the denial of potential benefits, the recent case of Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), clearly states that such a basis is constitutionally insufficient.[1] In *Reed* the statute gave a mandatory preference to men over women when persons of the same entitlement class applied for appointment as administrator of a decedent's estate. The clear objective of the provision was to avoid hearings on the merits when persons of different sex, but otherwise equal entitlement, sought to be administrator of an estate. In rejecting the sufficiency of the argument of administrative convenience the Court replied:

> Clearly the objective of reducing the workload on probate courts by eliminating one class of contests is not without some legitimacy. The crucial question, however, is whether § 15-314 advances that objective in a manner consistent with the command of the Equal Protection Clause. We hold that it does not. To give a mandatory preference to members of either sex over members of the other, merely to accomplish the elimination of hearings on the merits, is to make the very kind of arbitrary legislative choice forbidden by the Equal Protection Clause of the Fourteenth Amendment; . . . Id. at 76, 92 S.Ct. at 25.

The basic message which comes from this case is that administrative convenience is not a shibboleth, the mere recitation of which dictates constitutionality. Rather, whatever governmental benefit that can be supposed should be balanced with the impact upon the subject class and the arbitrariness of the classification.

The majority contends that to grant plaintiffs the relief they seek, that is to end the requirement that women demonstrate their spouses' dependency in fact, would dictate the complete abandonment of the congressional scheme for the extension of benefits.

This conclusion is simply incorrect since plaintiffs wish to change only a part of the scheme. Those provisions relating to the dependency of children, parents and others would remain intact. This result is far short of a complete abandonment of the statutory scheme. The severability clauses included when Titles 10 and 37 were enacted relieve this Court of the necessity of destroying the entire legislative framework in excoriating the discriminatory provisions. See Savings and Severability Provisions, Section 49 of Act August 10, 1956, c. 1041, 70A Stat. 640, and Savings and Severability Provisions, Section 12 of Pub.L. 87-649, September 7, 1962, 76 Stat. 497.

The majority seeks to minimize the impact and arbitrariness of the classification by characterizing the benefits which plaintiffs seek as a "windfall." This argument smacks of the long-discredited right-privilege dichotomy. When the Government determines to extend benefits, it must do so in a reasonable manner. Speiser v. Randall, 357 U.S. 513, 518, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958). The attachment of a moral connotation to the benefits which plaintiffs ask adds nothing to the analysis and again begs the question.

Accordingly, I conclude that the statutes and regulations here in issue are unconstitutional and I therefore dissent.

---

1. Although *Reed* involved a state statute and was decided on the basis of the Equal Protection Clause of the Fourteenth Amendment, there is no doubt that the analysis used in that case is applicable here. *See* Shapiro v. Thompson, 394 U.S. 618, 642, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), Schneider v. Rusk, 377 U.S. 163, 168, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964); Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954).