[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-12548

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 26, 2005
THOMAS K. KAHN
CLERK

D.C. Docket No. 03-00107-CV-2-WDO

FERRELLGAS PARTNERS, L.P.,
FERRELLGAS, L.P,
FERRELLGAS, INC.,

Plaintiffs-Appellants,

versus

HOMER BARROW,
JANET WHITLEY,
BARROW ENERGIES, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(July 26, 2005)**

Before BLACK and HULL, Circuit Judges, and HODGES[*], District Judge.

PER CURIAM:

_____

[*] Honorable Wm. Terrell Hodges, U. S. District Judge for the Middle District of Florida, sitting by designation.

This is an action by Ferrellgas Partners, L.P, Ferrellgas, L.P, and Ferrellgas, Inc. (collectively "Ferrellgas") pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and Georgia law against Homer Barrow, Janet Whitley, and Barrow Energies, Inc. (hereinafter "the Defendants"). The action arises out of the Defendants' use of the name "Barrow Energies" in connection with their propane business based in Butler, Georgia. Ferrellgas contends that "Barrow Energies" is confusingly similar to the "Barrow Propane Gas" name it uses in connection with its propane business, which also operates in Butler and the surrounding area. Ferrellgas claims that it obtained the right to exclusive use of the "Barrow" name in the propane business through a series of stock sales beginning with Mr. Barrow's sale of Barrow Propane Gas, Inc. in 1999.

Ferrellgas appeals the district court's refusal to preliminarily enjoin the Defendants from using the "Barrow" name. The district court denied the injunction because it found that Ferrellgas had not shown a substantial likelihood of proving that it owned the "Barrow" mark and because it concluded that money damages could adequately compensate Ferrellgas for any trademark infringement. We reverse and remand for the district court to issue a preliminary injunction consistent with this opinion.

# I.

Homer Barrow founded Barrow Propane Gas, Inc. (variously "Barrow Propane") in 1969 in Butler, Georgia with just two propane delivery trucks, a pickup, and a 30,000 gallon propane tank. Eventually, Mr. Barrow was able to expand his business by winning customers from competitors and by purchasing competing businesses and switching them over to "Barrow Propane Gas." Mr. Barrow's daughter, Janet Barrow Whitley, joined the company in 1989. By 1999, Barrow Propane had grown from its humble beginnings into a major business in the mid-Georgia area, with four offices serving customers in seventeen counties and generating approximately ten million dollars in propane gas sales each year. Barrow Propane promoted itself by displaying the name "Barrow Propane Gas" or "Barrow Propane" on its office signs, delivery trucks, equipment, propane tanks, invoices, bills, employee uniforms, newspaper advertisements, telephone directories, and promotional materials. According to Mr. Barrow, Barrow Propane had an outstanding business reputation by the time he decided to sell all of his shares.

In 1999, Mr. Barrow, as the sole shareholder, put his stock up for sale and issued a prospectus, touting his company's reputation. In December of that year, Mr. Barrow sold all of his stock in Barrow Propane Gas, Inc. to a company called Pro Am Southeast, Inc. (hereinafter "Pro Am") for $9.5 million. Mr. Barrow never

discussed with Pro Am any restrictions on Pro Am's use of the "Barrow" name, but

he testified that he instructed his attorney to tell Pro Am that the name was not for

sale. Pro Am vice president, Ken Welsh, testified that Pro Am's continued use of

the name was never an issue during negotiations and that it was clear Pro Am

intended to use the name without restriction. According to Mr. Welsh, it was

important for Pro Am to perpetuate the "Barrow" name because he felt that Pro Am

would not be successful in the area without it.[2]

The stock sale agreement between Mr. Barrow and Pro Am does not

specifically mention any trademarks or trade names then in use by Barrow Propane.

The contract contains no provisions relating to an assignment, transfer, or licensing

of the "Barrow" name to Pro Am. However, it imposes no restrictions on Pro Am's

use of the name and has no provisions contemplating the name's eventual

discontinuance. The agreement simply does not say, one way or the other, whether

the "Barrow" name was included in the purchase. Indeed, the only reference to

intellectual property which can be found in the agreement is the representation in §

3.9 that:

> There are no patents, patent applications, trademarks
> (whether registered or not), trademark applications, trade
> names, copyrights, patent or know-how licenses (wherein

---

[2] The "Barrow" name is most accurately characterized as a "service mark" or a "trade name," rather than a trademark. 15 U.S.C. § 1127. However, the distinction does not matter for purposes of this appeal, and we will refer to either the "Barrow" name or "Barrow" mark.

[Barrow Propane Gas, Inc.] is either licensee or licensor), used in the ordinary course of business of [Barrow Propane Gas, Inc.] [Barrow Propane Gas, Inc.] has not received any written notice or claim of any infringement, misuse or misappropriation by [Barrow Propane Gas, Inc.] of any patent, trademark, trade name, copyright, intellectual property rights license or similar right owned by any third party.

As a result of the sale, Pro Am became the sole shareholder of Barrow Propane Gas, Inc. and Mr. Barrow exited the propane business, agreeing not to work in the field for four years. Barrow Propane Gas, Inc. was eventually merged into Pro Am and ceased to exist as a separate corporate entity, but Pro Am continued to operate the enterprise under the "Barrow Propane Gas" name. Pro Am even started using the "Barrow" name at some of its Pro Am offices outside of the original Barrow territory. Pro Am's signs, trucks, equipment, tanks, invoices, bills, uniforms, and advertising and promotional materials continued to prominently display the "Barrow" name, except that on some of these items the words "A Pro Am Company" were included in smaller letters underneath. Pro Am also promoted Mrs. Whitley to general manager and placed her in charge of the Barrow Propane offices. Pro Am conducted business in this way for three years, without objection from Mr. Barrow or Mrs. Whitley about its use of the "Barrow" name. In late 2002, Ferrellgas purchased all of Pro Am's stock for $42 million, and Pro Am was eventually merged into Ferrellgas.

5

When Ferrellgas took over operations of Barrow Propane, it continued to use the "Barrow" name on signs, delivery trucks, equipment, propane tanks, invoices, bills, employee uniforms, and advertisements and promotional materials, but often with the phrase "A Division of Ferrellgas."[3] Ken Heinz, a vice president of Ferrellgas, testified that obtaining the "Barrow" name was an important part of the decision to purchase Pro Am. Mrs. Whitley was present during discussions about Ferrellgas' use of the name, but raised no objection when Ferrellgas expressed its intention to continue to use the name. According to Mr. Heinz, Mrs. Whitley actually requested and encouraged Ferrellgas to continue using the "Barrow" name.

Four months after Ferrellgas purchased Pro Am, Mrs. Whitley quit, citing dissatisfaction with the company and a desire to spend more time with her children. One month later, in May of 2003, Mrs. Whitley and others, including her husband, Tony Whitley, formed Barrow Energies, Inc. and began to sell propane products and services in the geographic area also served by Barrow Propane. Mrs. Whitley chose to include "Barrow" in her company's name even though no one who works at the company has the surname Barrow. Barrow Energies, Inc.'s company logo

---

[3] There is evidence in the record that Ferrellgas planned to transition to "Ferrellgas," and that this plan was carried out in areas where Pro Am had extended the "Barrow" name. However, it is undisputed that Ferrellgas continually used "Barrow" in its identifying mark where Barrow Propane Gas operated originally.

6

uses a blue and white color scheme with"Barrow" prominently displayed in letters larger than those used for the "Energies, Inc." part of the name. The "Barrow Energies" name is used in advertisements and on delivery trucks, equipment, propane tanks, invoices, company uniforms, and company letterhead. Barrow Energies, Inc. has an office in Butler, Georgia less than one mile from Barrow Propane's office. It hired fourteen of Barrow Propane's employees, including all of Barrow Propane's drivers in Butler and Montezuma, Georgia. Barrow Energies, Inc. promotes itself in the same way as Barrow Propane, and even offered an identical promotional calendar, except for the company name. At one point, separate advertisements for both Barrow Energies and Barrow Propane ran in a Macon County paper, each ad proclaiming that their companies were "large enough to serve you, small enough to know you" - a slogan previously used by Barrow Propane.

Ferrellgas filed suit in the Middle District of Georgia against Mr. Barrow, Mrs. Whitley, and Barrow Energies, Inc. for trademark infringement and unfair competition under the Lanham Act and Georgia statutory and common law.[4] The

---

[4] The parties do not challenge whether the claims under Georgia law involve the same dispositive issues as the claims under the Lanham Act. *See Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 839 (11th Cir. 1983) (considering only the Lanham Act); *University of Georgia Athletic Ass'n v. Laite*, 756 F.2d 1535, 1539 n.11 (11th Cir. 1985) (observing that "the standards governing most of the claims under Georgia law are similar, if not identical, to those under the Lanham Act."). Therefore, we will review the district court's decision by the standards governing claims under the Lanham Act.

district court held a two-day hearing on Ferrellgas' motion for preliminary injunction. In denying the motion, the district court held that Ferrellgas had not established a substantial likelihood of success on the merits. The court found it to be uncertain from the record whether Mr. Barrow transferred the rights to the "Barrow" name to Pro Am in the 1999 stock sale of Barrow Propane Gas, Inc. Consequently, it was not clear to the district court that Ferrellgas had acquired rights to the name when it bought Pro Am.[5] The district court further concluded that Ferrellgas had failed to establish a substantial threat of irreparable injury if the injunction were not issued. After excluding evidence of actual consumer confusion as "hearsay," the district court concluded that Ferrellgas had presented no evidence that the Defendants were operating their business in a way that would harm the reputation of Barrow Propane. The court then concluded that Ferrellgas would

---

[5] Specifically, the district court held with respect to the likelihood of success on the merits:

> Plaintiffs have not established a substantial likelihood of success on the merits. It is not clear from the record whether, when Defendant Homer Barrow sold Barrow Propane to Pro Am Southeast in 1999, he transferred all legal and equitable interest in the "Barrow" name with the sale of the business. If Pro Am did not purchase the name from Mr. Barrow, it could not have sold the same to Ferrellgas a year later when Ferrellgas purchased several of Pro Am's subsidiary companies, including Barrow Propane. Plaintiffs therefore have not established a *substantial* likelihood of success on the merits.

only be able to prove monetary damages and that, therefore, irreparable harm had not been shown.[6]

## II.

We review a district court's denial of a preliminary injunction under an abuse of discretion standard. *Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1517 (11th Cir. 1994). The district court's findings of fact must be accepted unless clearly erroneous. *Lucero v. Operation Rescue of Birmingham*, 954 F.2d 624, 627 (11th Cir. 1992). However, the district court's conclusions of law are reviewed de novo. *This That and Other Gift and Tobacco, Inc. v. Cobb County, Ga.*, 285 F.3d 1319, 1321 (11th Cir. 2002).

A district court should grant injunctive relief if the moving party shows: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury to

---

[6] The portion of the district court's order relating to irreparable harm reads:

> Plaintiffs have not established a substantial threat of irreparable injury if the injunction is not granted. Plaintiffs produced no evidence that Defendants were operating their business in a way that would harm the reputation of Barrow Propane, the entity owned by Plaintiffs. The only damages Plaintiffs may be able to prove are in the form of monetary damages.
> . . .
> The injuries Plaintiffs contend they will suffer, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough to constitute irreparable injury in this case. The possibility that adequate compensatory or other corrective relief may be available later, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

9

plaintiffs outweighs the harm an injunction may cause the defendant; and (4) that granting the injunction would not disserve the public interest. *Int'l Cosmetics Exchange, Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1246 (11th Cir. 2002) (quoting *Levi Strauss & Co. v. Sunrise Int'l Trading Co.*, 51 F.3d 982, 985 (11th Cir. 1995)).

## III.

A.  Substantial Likelihood of Success on the Merits

To establish a prima facie case in an ordinary trademark infringement suit, a plaintiff need only demonstrate "(1) that it has trademark rights in the mark or name at issue . . . and (2) that the defendant adopted a mark or name that was the same, or confusingly similar to the plaintiff's mark, such that there was a likelihood of confusion for consumers as to the proper origin of the goods [or services] created by the defendant's use of the . . . name. . . ." *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1512 (11th Cir. 1984).  *See also SunAmerica Corp. v. Sun Life Assur. Co. of Canada*, 77 F.3d 1325, 1334 (11th Cir. 1996).

1.  Substantial Likelihood Pro Am Purchased the "Barrow" Mark

The district court expressly considered only the first element of the prima facie case, *i.e.*, whether Ferrellgas had demonstrated a substantial likelihood of proving that it owned the "Barrow" name, and upon concluding that the likelihood of success with  respect to this element had not been shown, the court declined to

10

consider whether Ferrellgas had presented a substantial likelihood of proving the second element, likelihood of confusion. Although the district court did not say so specifically, it is nevertheless apparent that the district court was persuaded by the Defendants' proffered interpretation of § 3.9 of the stock sale agreement between Mr. Barrow and Pro Am representing that "[t]here are no . . . trademarks (whether registered or not), trademark applications [or] tradenames . . . used in the ordinary course of business of [Barrow Propane, Inc.]." The Defendants contend that this provision means that Pro Am did not acquire any rights to the "Barrow" mark. We conclude that the district court made an error of law in denying the preliminary injunction on this basis.[7]

The agreement between Mr. Barrow and Pro Am was for the sale of all of the stock in Barrow Propane Gas, Inc. and was not simply a transfer of all of the company's assets. Therefore, Mr. Barrow did not merely sell Barrow Propane's property to Pro Am; he sold Barrow Propane Gas, Inc., a going concern which Pro Am continued to operate (and expand) under the "Barrow" name. Where the entire stock of a business is purchased and the business continued under its original name, it must be presumed that the purchaser acquired the goodwill of the business

---

[7] Our review of the district court's contract interpretation, including the determination of whether the contract is ambiguous, is plenary. *In re Stratford of Texas, Inc.*, 635 F.2d 365, 368 (5th Cir. 1981) ("A question of contract interpretation, including the determination of whether a contract is ambiguous in order to permit extrinsic evidence of intent, is a question of law.").

11

together with the commercial symbols of that goodwill, the business' trademarks and trade names. *Dovenmuehle v. Gilldorn Mortgage Midwest Corp.*, 871 F.2d 697, 700 (7th Cir. 1989) ("Absent contrary evidence, a business trade name is presumed to pass to its buyer."); *Oklahoma Beverage Co. v. Dr. Pepper Love Bottling Co.*, 565 F.2d 629, 632 (10th Cir. 1977) (concluding that trademark transferred with sale of entire business even though it was not mentioned in the sale contract and stating that " [n]o particular words are necessary for the assignment when the business and the goodwill are transferred to another who continued the operation under the same trademark."); *Holly Hill Citrus Growers' Ass'n v. Holly Hill Fruit Products, Inc.*, 75 F.2d 13, 15 (5th Cir. 1935) ("[Trademarks] attach to and pass with the good will of a business, and, as appurtenant to it, they are freely and easily sold. No particular form of words is necessary to transfer them; they inhere in and pass with good will."); J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 18:37 (4th ed. 2005) ("When a business is sold as a going concern, the intent to transfer good will and trademarks to the buyer is presumed. Good will and trademarks are transferred even though not specifically mentioned in the contract of sale. That is, trademarks and the good will they symbolize are presumed to pass with the sale of a business.").

The stock sale agreement between Mr. Barrow and Pro Am does not expressly say that the "Barrow" mark was transferred to Pro Am. Clearly, however,

12

Pro Am purchased the corporation "Barrow Propane Gas, Inc." including the "Barrow" name given to that corporation by its founder. If not, what was the name of the corporation purchased by Pro Am? The Defendants apparently persuaded the district court that Pro Am had not acquired rights to the "Barrow" name because of the provision in the contract representing that there were no trademarks or trade names in use by Barrow Propane at the time of the sale. The provision relied upon by the Defendants is unambiguous; it says that there were no trademarks or trade names being used by Barrow Propane prior to the sale, but to construe that provision as excluding the transfer of the corporate name itself produces a ludicrous result not intended by the parties as clearly demonstrated by their post sale behavior - that is, the unchallenged and continuous use of the Barrow name by Pro Am and then Ferrellgas after the sale. If Homer Barrow had intended to reserve the corporate name he might have done so by selling the assets of the corporation, not the corporation itself, thereby retaining his 100% stock interest in the family corporation and its name.

The interpretation of § 3.9 suggested by the Defendants is also unreasonable because it provides no satisfactory explanation of what happened to the "Barrow" mark following the sale. The parties could not have contracted the mark out of existence because trademark law, not contract law, determines the existence of a trademark, and trademarks and trade names are not so easily destroyed. They can

13

be abandoned, but there is no evidence that this occurred; the mark has been used in commerce continually since its adoption.[8]  So, if Pro Am did not acquire the mark and it was not abandoned, then the only other options are that the mark was transferred to Mr. Barrow or was merely licensed to Pro Am. There is nothing in the record to support either of these options.

Section 3.9 does not have the import the Defendants ascribe to it.  When the two sentences of § 3.9 are read together it is clear that, rather than defeating or negating the transfer of the "Barrow" name to Pro Am, § 3.9 merely warrants that at the time of the sale Barrow Propane Gas was not using anyone else's intellectual property and had not received any written notice or claim by a third party that it was unlawfully doing so.  Even if the first sentence is read in isolation, § 3.9 does not have the meaning suggested by the Defendants.  At most, the first sentence simply states that the seller does not represent or warrant that Barrow Propane Gas has acquired a protectable interest in any intellectual property.  It is clear that the provision was intended to protect the seller from the buyer later claiming that the seller misrepresented that Barrow Propane Gas had such property.[9]  Indeed, the

---

[8] Under the Lanham Act, a mark or name is considered abandoned if "its use has been discontinued with intent not to resume such use."  15 U.S.C. § 1127.

[9] Mr. Barrow testified that he directed his attorney to reserve the mark after reviewing an earlier draft of the sale contract.  The draft of § 3.9 required Mr. Barrow to list all of the intellectual property used by Barrow Propane and represent that his company had the right to be using it.  The record does not reflect that the "Barrow" name was listed as intellectual property on the draft.  As explained above, the draft version of § 3.9 was replaced by the representation

14

structure of the agreement supports the conclusion that § 3.9 contains only the seller's representations and warranties and does not limit what was sold in the transaction. Section 3.9 is found in the part of the sale contract entitled "Representations and Warranties of the Shareholder." If it had the effect of carving out the "Barrow" name from the transaction, one would expect it to be in the part of the sale contract entitled "The Acquisition," which, *inter alia,* describes what was sold - namely, all of Mr. Barrow's stock in Barrow Propane Gas, Inc.

It follows then that the only suitable interpretation of the sale agreement is that the mark remained with the corporation when it was sold to Pro Am.[10] Without

_____

that at the time of the sale Barrow Propane Gas was not using anyone else's intellectual property and had not received any written notice or claim that it was unlawfully doing so. Mr. Barrow's testimony relating to the genesis of the disputed provision cannot create an ambiguity through which a reservation or other limitation on Pro Am's use of the "Barrow" name may be read into the contract.

Even if the contract could be construed as effecting a transfer of the mark to Mr. Barrow, *sub silentio*, such a transfer would be an invalid transfer "in gross." "[I]t is well-settled law that 'the transfer of a trademark or trade name without the attendant good-will of the business which it represents is, in general, an invalid, 'in gross' transfer of rights.'" *Int'l Cosmetics Exchange, Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1246 (11th Cir. 2002) (quoting *Berni v. Int'l Gourmet Rest. of Am.*, 838 F.2d 642, 646 (2d Cir. 1988)). After selling all of his stock in Barrow Propane Gas, Inc., Mr. Barrow exited the propane business with the understanding that Pro Am would carry on his work. Without the appurtenant goodwill, Mr. Barrow could not legally hold the mark for later exploitation. *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97, 39 S.Ct. 48, 50, 63 L.Ed. 141 (1918) ("There is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed."); *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.5 (11th Cir. 2001) (stating that rights to a mark depend on bona fide use in commerce that "was not made merely to reserve a mark for later exploitation." (quotations omitted)); *Holly Hill*, 75 F.2d at 15 ("[Trademarks] are incidents and appurtenances to businesses and trades. They have no independent existence; they may not be sold in gross. They attach to and pass with the good will of a business. . . .").

[10] McCarthy, *supra* § 18:32 ("When a business and good will are sold to another, the trademarks of the business pass, even though they may consist of the personal name of the

15

evidence tending to rebut the presumption that the mark was transferred, it was error for the district court to conclude that Ferrellgas had failed to demonstrate a substantial likelihood of succeeding on the merits.[11]

2. Secondary Meaning and Likelihood of Confusion

Because the "Barrow" mark utilizes a surname, it is entitled to trademark protection only to the extent it has acquired "secondary meaning." *Conagra*, 743 F.2d at 1513. Simply stated, secondary meaning is the connection in the consumer's mind between the mark and the user of the mark. *University of Florida v. KPB, Inc.*, 89 F.3d 773, 776 n.5 (11th Cir. 1996); *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1536 n.14 (11th Cir. 1986). The factors to consider in determining whether a name has acquired secondary meaning are: "(1) the length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by [the user] to promote a conscious connection in the public's mind between the name and [the user's] product or business; and (4) the extent to which the public

---

assignor. If a person has sold a business which is identified by his personal name, the name is an asset which he has sold, and he cannot keep commercial control of the name and keep the purchase price too.").

The Defendants also argued that Pro Am did not sell the mark to Ferrellgas because their sale agreement did not specifically list the "Barrow" name on its disclosure of intellectual property. This fact does not cast sufficient doubt on Ferrellgas' ability to succeed on the merits.

[11] We do not reach whether the Defendants are estopped from denying that Ferrellgas owns the "Barrow" mark because of their acquiescence in Pro Am's and Ferrellgas' use of the mark.

actually identifies the name with the [user's] product or venture." *Conagra*, 743 F.2d at 1513.

Likelihood of confusion is a factual question "determined by analysis of a number of factors, including: (1) the strength of the plaintiff's mark; (2) the similarities between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and the defendant; (4) the similarity of the sales methods, *i.e.*, retail outlets or customers; (5) the similarity of advertising methods; (6) the defendant's intent, *e.g.*, does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) the most persuasive factor on likely confusion is proof of actual confusion." *Id.* at 1514.

We conclude that the evidence presented demonstrates a substantial likelihood that Ferrellgas can prove that its "Barrow" mark acquired secondary meaning. The mark has been in continuous use in the relevant area for over 35 years, appearing on the company's office signs, trucks, propane tanks, employee uniforms, customer invoices, and advertising materials. The evidence supports a finding that the owners of the mark have expended great effort in establishing a connection between the "Barrow" name and the propane business and that the public actually identifies the name with Barrow Propane, notwithstanding its use in other businesses selling different products and services in the area. *See Safeway*

17

*Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1165 (11th Cir. 1982) (finding no significant third-party use).

We also conclude that the evidence demonstrates a substantial likelihood that Ferrellgas will be successful in establishing likelihood of confusion. First, several witnesses, including Mr. Barrow, testified that the "Barrow" mark is strong and that Barrow Propane enjoys a good or "outstanding" reputation in the community. Second, the similarity of the two marks is apparent and strongly suggests a likelihood of confusion. Both incorporate the "Barrow" name as the prominent identifying word, and both utilize a blue and white color scheme. Third, the two companies provide identical services within the same geographic area. In fact, Barrow Energies now employs all of Barrow Propane's former drivers from its Butler and Montezuma offices. Fourth, the two companies advertise in the same ways. Indeed, they disseminated identical promotional calendars and both ran advertisements in the same issue of a Macon County newspaper using Barrow Propane's slogan: "Large enough to serve you, small enough to know you." And fifth, there is evidence suggesting that the Defendants intend to gain a competitive advantage by trading off of the goodwill associated with the "Barrow" name; no one at Barrow Energies uses the Barrow surname. We find this evidence to be sufficient to sustain Ferrellgas' burden at this preliminary stage, even without evidence of actual confusion, *see Montgomery v. Noga*, 168 F.3d 1282, 1302 (11th

18

Cir. 1999) (actual confusion is not required to prove likelihood of confusion), and so, we do not reach whether the district court abused its discretion in excluding evidence of actual confusion as hearsay.

B. Substantial Threat of Irreparable Harm

The district court concluded that Ferrellgas failed to establish the second element for preliminary injunctive relief - the substantial threat of irreparable harm if the injunction does not issue. According to the district court, "Plaintiffs produced no evidence that Defendants were operating their business in a way that would harm the reputation of Barrow Propane. . . ." Therefore, the court concluded that any damages suffered by Ferrellgas due to the Appellees' use of the "Barrow" mark could be adequately compensated with money damages, militating against a conclusion of irreparable harm.

However, "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill. Irreparable injury can also be based upon the possibility of confusion." *Pappan Enters. , Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998) (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 196 (3d Cir. 1990) (holding that the lack of control over one's mark "creates the *potential* for damage to . . . reputation[, which] constitutes irreparable injury for the purpose of granting a preliminary injunction in a trademark case.")); *Power Test Petroleum Distributors, Inc. v. Calcu Gas, Inc.*,

19

754 F.2d 91, 95 (2d Cir. 1985) (holding that irreparable injury "exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark pending trial."). "[T]he most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods. Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the acts of another." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988) (citation omitted). A plaintiff need not show that the infringer acted in such a way as to damage the reputation of the plaintiff. It is the loss of control of one's reputation by the adoption of a confusingly similar mark that supplies the substantial threat of irreparable harm.

This Circuit has held that "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . [a] substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998) (quoting *E. Remy Martin & Co. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985)); *see also Tally-Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989) (holding that a substantial likelihood of confusion is a substantial threat of irreparable

injury).[12] We conclude that Ferrellgas has presented a sufficiently strong showing of likely confusion so that irreparable harm is established.

C.  Other Elements of a Preliminary Injunction

The remaining elements for a preliminary injunction have been satisfied. The balancing of the hardships tips in favor of issuing the injunction.  Barrow Energies has been in business for a short period of time (two years), which suggests that it has limited goodwill of its own.  Any harm occasioned by enjoining Barrow Energies' use of the "Barrow" mark is therefore outweighed by the potential damage to Barrow Propane's goodwill by Barrow Energies' use of its confusingly similar mark.  We also note that the parties have represented that the case is ready for disposition with discovery concluded and motions for summary judgment fully briefed.  Therefore, if Ferrellgas is ultimately unsuccessful on the merits, the

---

[12] Other circuits are in accord. *See, e.g.,  Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 640 (1st Cir. 1992) ("irreparable harm flows from an unlawful trademark infringement as a matter of law"); *Opticians Ass'n of Am.,* 920 F.2d at 196 ("Potential damage to reputation constitutes irreparable injury for the purpose of granting a preliminary injunction in a trademark case."); *Int'l Kennel Club, Inc.*, 846 F.2d at 1092 (holding that damages caused by "trademark infringement are by their very nature irreparable");  *General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 625 (8th Cir. 1987) ("Since a trademark represents intangible assets such as reputation and good-will, a showing of irreparable injury can be satisfied if it appears that [plaintiff] can demonstrate a likelihood of consumer confusion."); *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1220 (9th Cir. 1987) ("Once the plaintiff in an infringement action has established a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief does not issue."); *Standard & Poor's Corp. v. Commodity Exchange, Inc.*, 683 F.2d 704, 708 (2d Cir. 1982) ("In the preliminary injunction context, a showing of likelihood of confusion as to source or sponsorship establishes the requisite likelihood of success on the merits as well as risk of irreparable harm.").

preliminary injunction will prevent the Defendant's use of the name for a relatively brief period of time.

Finally, the public interest will be served by the injunction by avoiding confusion in the marketplace. *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001).

Accordingly, the decision of the district court is REVERSED and the case is REMANDED for the district court to issue a preliminary injunction consistent with this opinion and Rule 65 of the Federal Rules of Civil Procedure.[13]

**REVERSED AND REMANDED**.

---

[13] The district court may elect to exclude Homer Barrow from the preliminary injunction because of a lack of evidence of his personal involvement in the formation or management of Barrow Energies, Inc. While there is evidence that Mr. Barrow assisted his daughter, Defendant Whitley, in capitalizing the corporation, there is no evidence that he is otherwise involved in the ownership, management, or operation of that corporation or that he has otherwise personally engaged in any acts of infringement. Furthermore, pursuant to Rule 65 of the Federal Rules of Civil Procedure, the injunctive order will reach "the parties to the action, their officers, agents, servants, employees, and attorneys, and . . . those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise" such that Mr. Barrow would be prohibited in any event from acting in concert with the other Defendants in any future act of infringement while the preliminary injunction is in effect.