**HOOP CULTURE, INC., Plaintiff,**

v.

**GAP, INC., Defendant.**

**Case No. 6:15–cv–1028–Orl–40TBS.**

United States District Court,
M.D. Florida,
Orlando Division.

Signed Aug. 19, 2015.

Ava K. Doppelt, Ryan Thomas Santurri, Allen, Dyer, Doppelt, Milbrath & Gilchrist, PA, Orlando, FL, M. Kelly Tillery, Sean P. McConnell, Pepper Hamiton, LLP, Philadelphia, PA, for Plaintiff.

Brandon Scott Degel, Winderweedle, Haines, Ward & Woodman, PA, Winter Park, FL, James Jeffrey Deery, Winderweedle, Haines, Ward & Woodman, PA, Orlando, FL, James D. Weinberger, Jason Jones, Fross, Zelnick, Lehrman & Zissu, PC, New York, NY, for Defendant.

## ORDER

PAUL G. BYRON, District Judge.

This cause comes before the Court on the following:

1. Plaintiff's Motion for Preliminary Injunction and Supporting Memorandum of Law (Doc. 8), filed July 14, 2015;

2. Defendant's Memorandum of Law in Opposition to Plaintiffs Motion for Preliminary Injunction (Doc. 39), filed August 3, 2015;

3. Plaintiff's Reply in Support of Motion for Preliminary Injunction (Doc. 56), filed August 7, 2015;

4. Plaintiff's Motion for Expedited Discovery (Doc. 9), July 14, 2015;

5. Defendant's Opposition to Plaintiff's Motion for Expedited Discovery (Doc. 34), filed July 29, 2015; and

6. Plaintiff's Reply in Support of its Motion for Expedited Discovery (Doc. 55), filed August 6, 2015.

On August 10, 2015, the Court held an evidentiary hearing on Plaintiff's Motion for Preliminary Injunction. (Doc. 57). Upon consideration, Plaintiff's Motion for Preliminary Injunction is due to be denied and Plaintiff's Motion for Expedited Discovery is due to be denied as moot.

## I. FINDINGS OF FACT

Plaintiff, Hoop Culture, Inc. ("Hoop Culture"), is a clothing and accessories brand that revolves around promoting the lifestyle associated with the game of basketball. Hoop Culture's target consumers are boys between the ages of thirteen through eighteen. Its merchandise is sold largely online, but it does have a small presence in pop-up shops and several retail outlets to which Hoop Culture sells its items wholesale. Hoop Culture is and continues to aspire to be a premium clothing brand. At issue in this case is Hoop Culture's federal trademark, EAT ... SLEEP ... BALL®. Hoop Culture develops, markets, and sells clothing and accessories bearing the trademark, EAT ... SLEEP ... BALL®. It is their best performing trademark with the company deriving about 30% of its sales (and growing) from the sale of items bearing the mark.

Defendant, Gap, Inc. ("Gap"), is a global retailer of clothing and accessories and is the parent company for a number of retail brands, including Old Navy. Among the many items Old Navy sells at its 900 retail stores are athletic and activewear clothing which focus on basketball. Old Navy targets customers seeking affordable, fashionable items for themselves and their children. Old Navy sells its merchandise through its retail outlets and online through its website.

In April 2014, Gap designed t-shirts bearing the phrase EAT SLEEP BALL. Prior to manufacturing t-shirts with the phrase EAT SLEEP BALL, Gap had manufactured other t-shirts with phrases such as EAT SLEEP WIN, EAT SLEEP SKATE, and EAT SLEEP PARTY REPEAT. Moreover, Gap's Active Graphics Manager, Matthew Duckett, testified that he had never heard of Hoop Culture or its products bearing the mark EAT ... SLEEP ... BALL®. In total, Gap designed and manufactured approximately 115,000 shirts with the phrase EAT SLEEP BALL. According to Gap's Vice President of Global Finance, Christopher Hubbard, there are approximately 36,000 shirts which remain in Gap stores' inventory and the t-shirts are no longer being sold online. As Gap's EAT SLEEP BALL t-shirt is a seasonal item, Gap will not be re-ordering its stock of EAT SLEEP BALL t-shirts, and Gap is likely to sell out of these shirts around October 2015 based on current customer demand.

The following images are sample t-shirts from Hoop Culture (left) and Gap:

Other than the ellipses used in Hoop Culture's t-shirt and the logos of each of the companies, the t-shirts are remarkably similar.

Hoop Culture sells its t-shirts bearing the mark EAT ... SLEEP ... BALL® for approximately $28 per t-shirt, although it sometimes offers the t-shirts for less through sales or promotions. Old Navy has sold its EAT SLEEP BALL t-shirts for as low as $4 per t-shirt. The President of Hoop Culture, Michael Brown, testified

that the products it sells are of high-quality, and his company takes steps to monitor and control the quality of the products it sells, including its EAT ... SLEEP ... BALL® products. Mr. Brown testified that he did not want to be associated with the Old Navy brand because Hoop Culture wants to be a higher-end brand than Old Navy. In Mr. Brown's opinion, when people see the mark EAT ... SLEEP ... BALL®, they think of Hoop Culture. This is because Hoop Culture dedicates a substantial amount of resources to advertising and branding its products.

At the evidentiary hearing, Mr. Brown testified about one instance of brand confusion. Hoop Culture's social media director, Brandon Harris, was in South Florida at a training session when one of the children came up to him and told Mr. Harris that he was "repping" Hoop Culture's brand. However, the child was wearing an Old Navy t-shirt. Mr. Brown testified about other instances where customers elected to purchase the Old Navy t-shirt because of its lower price. For example, Mr. Brown talked about an instance when his company was selling Hoop Culture's t-shirts at Disney World and a child was looking at the EAT ... SLEEP ... BALL® t-shirts. Another child came up to the child looking at the t-shirts and told him that he could get the same t-shirt for a lower price at Old Navy. Mr. Brown also testified about a time when a young man was wearing the Old Navy t-shirt and his mother asked Mr. Brown if the Old Navy t-shirt was one of Hoop Culture's shirts. The family had been fans of the Hoop Culture brand but had purchased an Old Navy EAT SLEEP BALL t-shirt for $4.

Around April 2015, Hoop Culture learned of Gap's Old Navy brand selling a t-shirt that bore similarity to t-shirts it sells with its trademark, EAT ... SLEEP ... BALL® through the social media website, Twitter. Despite discussions between the parties, they were unable to resolve their dispute, and Hoop Culture filed suit against Gap on June 23, 2015. (Doc. 1). Hoop Culture filed its Motion for Preliminary Injunction against Gap on July 14, 2015. (Doc. 8).

## II. CONCLUSIONS OF LAW

■ A plaintiff is entitled to preliminary injunctive relief upon establishing: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir.1998). A preliminary injunction is an extraordinary remedy that should only be entered upon the movant establishing each of the four requisite elements. *Id.*

### A. Plaintiff is Not Substantially Likely to Succeed on the Merits of its Trademark Infringement and Trademark Counterfeiting Claims.

In Hoop Culture's Complaint against Gap, it asserts that Gap's marketing and sale of Gap's EAT SLEEP BALL clothing constitutes the unauthorized use and counterfeiting of Hoop Culture's federally registered trademark EAT ... SLEEP ... BALL® under § 32(1) of the Lanham Act (Count I) and false designation of origin and unfair competition under § 43(a) of the Lanham Act (Count II). (Doc. 1). Hoop Culture asserts that these claims are related and that it is substantially likely to

succeed on the merits of both. (Doc. 8, pp. 5, 12).[1]

As to Hoop Culture's claim under § 32(1), the Lanham Act provides, in pertinent part, as follows:

> (1) Any person who shall, without the consent of the registrant—
>
>> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection · with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive....
>
> . . . .
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1) (2012). Thus, to prevail on a claim of trademark infringement, Hoop Culture must establish: (1) that it possesses a valid mark, (2) that Gap used the mark, (3) that Gap's use of the mark occurred "in commerce," (4) that Gap used the mark "in connection with the sale ... or advertising of any goods," and (5) that Gap used the mark in a manner likely to confuse consumers. *N. Am. Med. Corp. v. Axiom Worldwide, Inc.,* 522 F.3d 1211, 1218 (11th Cir.2008). Gap asserts that Hoop Culture is unlikely to succeed on the merits of its claim because it·does not own

a valid trademark and Gap does not use the mark in a manner likely to confuse consumers. (Doc. 39, p. 6).

### 1. Whether Hoop Culture Owns a Valid Trademark

Gap asserts that Hoops Culture's trademark of EAT ... SLEEP ... BALL® does not function as a valid trademark and should not have been registered. (Doc. 29, p. 6). A "trademark" is defined, in relevant part, as "any word, name, symbol, or device, or any combination thereof ... used by a person ... to identify and distinguish his or her goods, including a unique product, from those manufactured or sold. by others and to indicate the source of the goods." 15 U.S.C. § 1127. Gap asserts that Hoop Culture's use of the trademark EAT ... SLEEP ... BALL® is merely ornamental and, therefore, Hoop Culture's trademark is not entitled to a presumption of validity, citing Go *Pro, Ltd. v. River. Graphics, Inc.,* 2006 WL 898147, at *5–6 (D.Colo. Apr. 5, 2006). Specifically, Gap argues that Hoop Culture's use of the mark EAT ... SLEEP ... BALL® does not identify the source and Hoop ·Culture has shown no secondary meaning. *See Vision Ctr. v. Opticks, Inc.,* 596 F.2d 111, 115–16 (5th Cir.1979) (describing the definitions of and the degree of protection for generic, descriptive, suggestive, and arbitrary or fanciful terms),[2] *cert. denied,* 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980). "In order to establish secondary meaning the plaintiff 'must show that

---

**1.** Specifically, Hoop Culture acknowledges that the analysis of a § 32(1) infringement claim is substantially the same as the analysis of a § 43(a) false designation of origin ·and unfair competition claim. (Doc, 8, p. 12). Thus, the Court analyzes Hoop Culture's likelihood of success on the merits for its claim for trademark infringement pursuant to · § 32(1).

**2.** In *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1209 (11th Cir.1981) (en ·banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit that were handed down prior to October 1, 1981. ·

the primary significance of the term in the minds of the consuming public is not the product but the producer.'" *Id.* at 118 (quoting *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 118, 59 S.Ct. 109, 83 L.Ed. 73 (1938)).

Without deciding the question of law Gap's defense presents, the Court notes that the availability of the defense and the testimony at the evidentiary hearing supporting such a defense lends credibility to the determination that plaintiff is not *substantially* likely to succeed on the merits of its trademark infringement claim as to this element at this time. There was no persuasive testimony at the evidentiary hearing that Hoop Culture's use of the mark EAT ... SLEEP ... BALL® identified Hoop Culture as the source or that the mark had acquired secondary meaning.

### 2. Whether Gap Has Used Hoop Culture's Mark in a Manner Likely to Confuse Consumers

■■■ To determine whether Gap has used Hoop Culture's mark in a manner likely to confuse consumers, the Eleventh Circuit directs district courts to consider seven factors:

(1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion.

*N. Am. Med. Corp.*, 522 F.3d at 1220.

As to the first element, there was some anecdotal testimony at the evidentiary hearing that people in the marketplace understand that the mark EAT ... SLEEP ... BALL® is used in connection with Hoop Culture. However, there was also testimony that the phrase "eat, sleep, ball" is used in social media to refer to things that do not appear to have anything to do with Hoop Culture. As to the similarity between the marks, while both Hoop Culture and Gap's t-shirts use the same words and word placement on their t-shirts, each t-shirt is identified with the company's name or logo. Hoop Culture's t-shirts include the name of the company, "Hoop Culture," beneath the EAT ... SLEEP ... BALL® mark. Gap's t-shirt uses a boomerang logo at the end of the phrase EAT SLEEP BALL. The words "Hoop Culture" and the boomerang logo are not similar. As to the similarly between the products, there was testimony that Hoop Culture's t-shirts are of a much higher quality than Gap's. So to that extent, the products are not exactly similar. Both companies sell, or previously sold, their products online. Hoop Culture advertises its t-shirts mainly though social media and through the use of brand representatives. There was no testimony as to how Gap advertises these specific t-shirts other than offering them for sale online and in its Old Navy stores. There was persuasive testimony from Gap's graphic manager that Gap did not have a malicious intent in designing, marketing, and selling its EAT SLEEP BALL t-shirts. Lastly, there was almost no evidence of actual confusion aside from one anecdote about a young child being confused about where his t-shirt was from. Overall, the testimony lent support to the idea that people knew they were buying EAT SLEEP BALL t-shirts from Old Navy, and that these t-shirts had nothing to do with Hoop Culture. Taking all these factors togeth-

er, the Court finds that Hoop Culture has not carried its burden that Gap has used Hoop Culture's mark in a manner likely to confuse consumers.

### B. Hoop Culture Has Not Demonstrated That It Will Suffer Irreparable Injury Absent an Injunction

■■ Moreover, the Court finds that Hoop Culture has not carried its burden of demonstrating that it will suffer irreparably injury unless an injunction issues. Generally, a district court may make a "presumption of irreparable harm once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim." *N. Am. Med. Corp.*, 522 F.3d 1211; *but see eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006) (encouraging the application of all four factors of the framework for obtaining injunctive relief). However, such a presumption is inappropriate in the instant case as Hoop Culture has failed to establish a substantial likelihood of success on the merits of its trademark infringement claim.

■■ In determining whether a plaintiff has established irreparable injury, courts look to factors such as loss of control of reputation, loss of trade, and loss of goodwill. *Ferrellgas Partners, L.P. v. Barrow*, 143 Fed.Appx. 180, 190 (11th Cir. 2005) (per curiam). "Irreparable injury can also be based upon the possibility of confusion." *Id.* On this record, Hoop Culture has failed to establish sufficient evidence of irreparable injury. Mr. Brown did not testify that his company has lost market share over Gap's selling of the EAT SLEEP BALL t-shirts. In fact, Mr. Brown testified that Hoop Culture's sales are actually increasing. There was also no testimony that those people who purchased EAT SLEEP BALL t-shirts from Old Navy would have purchased EAT ... SLEEP ... BALL® t-shirts from Hoop Culture, especially given that the EAT SLEEP BALL t-shirts are sold by Old Navy at a lower price point than those EAT ... SLEEP ... BALL® sold by Hoop Culture. As discussed in more detail above, Hoop Culture did not offer persuasive evidence on brand confusion. Further, the Court heard testimony that Old Navy will sell out of its EAT SLEEP BALL t-shirts within the next two months and will not be re-ordering, thus eliminating the misconduct Hoop Culture alleges. Finally, the Court finds that any injuries sustained by Plaintiff can be cured by monetary damages.

### III. CONCLUSION

Hoop Culture's motion for preliminary injunction is due to be denied because it fails to establish that it is substantially likely to succeed on the merits of its trademark infringement claim and that it will suffer irreparable injury absent an injunction.[3] Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Preliminary Injunction and Supporting Memorandum of Law (Doc. 8) is **DENIED.**

---

3. In light of the fact that the Court has determined that Hoop Culture failed to carry its burden for a preliminary injunction as to the first and second prongs (substantial likelihood of success on the merits and irreparable injury will be suffered unless the injunction issues), the Court declines to address the third and fourth prongs (the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party and if issued, the injunction would not be adverse to the public interest).

2. Plaintiffs Motion for Expedited Discovery (Doc. 9) is **DENIED AS MOOT**.[4]

---

4. In Plaintiff's Reply in Support of its Motion for Expedited Discovery (Doc. 55), Plaintiff indicates that its motion for expedited discovery is now moot in light of the Court having held an evidentiary hearing in this case.