Upon the expiration of the Franchise Agreement in May 2017, Defendant Rahman re-branded the Franchised Restaurant as "Orange Fried Chicken," a similar quick-service restaurant specializing in the sale fried chicken. Orange Fried Chicken also uses a logo, marks and other décor that are confusingly similar to the Church's Chicken logo and Marks. Thereafter, Plaintiffs demanded that Defendants cease and desist the use of confusingly similar marks at the former Franchised Restaurant. Plaintiffs also demanded that Defendants cease and desist operating *1329 Orange Fried Chicken, which Plaintiffs claim violates the post-expiration non-compete provision in the Franchise Agreement. Upon Defendants refusal to comply with Plaintiffs' demands, Plaintiffs filed this action seeking to enjoin all Defendants from, among other things, continuing to infringe on Plaintiffs' trademarks and continuing to violate the non-compete in the Franchise Agreement.
Specifically, the Franchise Agreement provides that upon expiration or termination of the Franchise Agreement, the franchisee may not "for a period of two years, own, maintain, engage in, or have any interest in any restaurant business that specializes in the sale of chicken or has a method of operation or trade dress similar to that employed in the System and that is located within a 25-mile radius of (i) any Franchised Location or (ii) the location of any other Church's Restaurant that is in existence as of the date of the expiration or earlier termination of this Agreement."
The Swati Defendants do not oppose the injunctive relief that Plaintiffs seek. However, the Swati Defendants claim that they cannot bring the former Franchised Restaurant into compliance with Plaintiffs' demands because they no longer own or control the Restaurant. Rahman, who acknowledges he owns and controls the Restaurant, nevertheless claims that he is not bound by the non-compete and other post-expiration obligations in the Franchise Agreement because he did not sign the Franchise Agreement. Similarly, Rahman asserts in his Motion to Dismiss that as a non-signatory to the Franchise Agreement, the personal jurisdiction and venue selection provisions contained therein do not apply to him.
ANALYSIS
Plaintiffs have satisfied their burden pursuant to Federal Rule of Civil Procedure 65 and have established (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) that the threatened injury to the Plaintiffs outweighs whatever damage the proposed injunction may cause the Defendants; and (4) the injunction is not adverse to the public interest. See, e.g., McDonald's Corp. v. Robertson , 147 F.3d 1301, 1306 (11th Cir. 1998).
1. PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR CLAIMS
Having determined that the Franchise Agreement's provisions are enforceable, the primary issue before the Court is whether non-signatory Rahman is bound by the obligations in the Franchise Agreement, namely, the non-compete, personal jurisdiction provision and forum selection provision. Based on these circumstances where Defendants failed to disclose the Sale to Plaintiffs or obtain Plaintiffs' approval of the same, and where Rahman, acting in concert with the Swati Defendants, performed under the Franchise Agreement for nearly the entire ten-year term of the Franchise Agreement, it is justified and warranted to extend all terms of the Franchise Agreement to non-signatory Rahman, including the personal jurisdiction provision, forum selection clause, non-compete and other post-expiration obligations.
Rule 65 extends to "the parties to the action, their officers, agents, servants, employees and attorneys, and upon those persons in active concert or participation with them." Fed. R. Civ. P. 65(d)(2)(C). Even under Rahman's theory that he knew nothing about the Franchise Agreement, Rahman falls within the ambit of Rule 65 as an owner, employee, and someone "in active *1330 concert and participation" with the Swati Defendants.
In addition, while it is true that non-signatories are generally not bound by contracts, " 'traditional principles of state law' may allow 'a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third party beneficiary theories, waiver and estoppel.' " Lawson v. Life of the S. Ins. Co. , 648 F.3d 1166 (11th Cir. 2011) (quoting Arthur Andersen LLP v. Carlisle , 556 U.S. 624, 631, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009) ). Specifically, assumption and equitable estoppel apply here to prevent Rahman from performing under and reaping the benefits of the Franchise Agreement for ten years, and then repudiating the post-expiration obligations on the basis that he did not sign the Franchise Agreement. See, generally, Employers Ins. of Wausau v. Bright Metal Specialties, Inc. , 251 F.3d 1316 (11th Cir. 2001) (holding that a non-signatory was bound by a contractual arbitration clause because even though he did not sign the contract with the arbitration provision, the non-signatory did sign a "Takeover Agreement" which "clearly reveals [his] intent to 'step in the shoes' of [the predecessor]"); A.L. Williams & Assoc., Inc. v. McMahon , 697 F.Supp. 488, 494 (N.D. Ga. 1988) (finding that "a party cannot have it both ways; it cannot rely on the contract when it works to its advantage and then repute it when it works to its disadvantage."); Quail Cruises Ship Management Ltd. v. Agencia De Viagens Cvc Tur Limitada , 2010 WL 1524313, at *4 (S.D. Fla. Apr. 14, 2010) (noting that equitable estoppel prevents a party from benefiting "from the terms of a contract while simultaneously avoiding its burdens.")
Given Rahman's prolonged performance under the Franchise Agreement and his acceptance of the benefits of the Franchise Agreement, it is appropriate to impose the Franchise Agreement's non-compete on Rahman under an assumption and equitable estoppel theory. See Little Caesar Enterprises, Inc. v. Little Caesar's VA, Inc. , 2:09cv112 at 35-36 (E.D. Va. Aug. 27, 2009) (holding that a non-signatory to a franchise agreement was bound by the agreement's covenant not to compete where the non-signatory operated the franchise and conspired with the signatory of the franchise agreement to conceal the non-signatory's involvement in the franchise); The Maids International, Inc. v. Maids on Call, LLC , 2017 WL 4277146 at *3-4 (D. Neb. Sept. 25, 2017) (enjoining non-signatories that were operating a competing business upon termination of the franchise agreement).
Plaintiffs similarly established that they have a likelihood of success on prevailing on their Lanham Act claims, as the logo and other marks presently used by Orange Fried Chicken are confusingly similar to Plaintiffs' marks. See Ferrellgas Parts., L.P. v. Barrow , 143 Fed.Appx. 180, 186 (11th Cir. 2005) (quoting Conagra, Inc. v. Singleton , 743 F.2d 1508, 1512 (11th Cir. 1984) (emphasis added)).
2. DEFENDANTS' CONTINUING INFRINGEMENT AND UNLAWFUL COMPETITION ARE CAUSING IRREPARABLE INJURY TO PLAINTIFFS
Having demonstrated Plaintiffs' likely success on the merits, Plaintiffs also established that they are suffering irreparable injury through: 1) Defendants' use of logos, marks and trade dress that are confusingly similar to Plaintiffs' trademarks and trade dress; and 2) Defendants' operation of Orange Fried Chicken in direct violation of the Franchise Agreement's non-compete. See e.g., *1331 McDonald's v. Robertson , 147 F.3d 1301, 1310 (11th Cir. 1998) ; Ferrellgas Parts., L.P. v. Barrow , 143 Fed.Appx. 180, 190 (11th Cir. 2005) ; Smallbizpros, Inc. v. Court , 414 F.Supp.2d 1245, 1251 (M.D. Ga. 2006).
3. THE THREATENED INJURY TO PLAINITFFS OUTWEIGHS ANY THREATENED HARM TO DEFENDANTS
Plaintiffs also established that the injury to them outweighs any harm to Defendants. "Generally, a franchisee that has breached the terms of its franchise agreement cannot then complain of harm from an injunction to prevent further violations of the agreement." Winmark Corp v. Brenoby Sports, Inc. , 32 F.Supp.3d 1206, 1224 (S.D. Fla. 2014). Here, Plaintiffs have established that Defendants' ongoing operations of Orange Fried Chicken along with the use of confusingly similar marks and logos at the Restaurant would further damage Plaintiffs' reputation and undermine their franchise system. As such, Plaintiffs have satisfied their burden that the balance of the harms weighs in their favor.
4. THE INJUNCTION IS NOT ADVERSE TO THE PUBLIC INTEREST
Plaintiffs also established that the requested injunction against Defendants is not adverse to the public interest. The public interest is served by supporting contractual enforcements that fortify the franchise system itself. See Burger King Corp. v. Majeed , 805 F.Supp. 994, 1006 (S.D. Fla. 1992).
5. THE EXERCISE OF PERSONAL JURISDICTION OVER RAHMAN IS PROPER AND VENUE IS PROPER
As discussed supra , the Court has determined that the Franchise Agreement is binding on Rahman. As such, the personal jurisdiction and forum selection clauses in the Franchise Agreement (which provide for both personal jurisdiction over the franchisee and venue in this Court) are likewise binding on Rahman. Notably, Rahman does challenge the enforceability of these provisions. Rather, he merely argues these provisions are not binding on him because he did not sign the Franchise Agreement. This Court disagrees. See Lipcon v. Underwriters at Lloyd's, London , 148 F.3d 1285, 1299 (11th Cir. 1998) ("In order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound."). Here, the evidence shows that Rahman is so closely related to this dispute that it was foreseeable that he would be bound by the Franchise Agreement's personal jurisdiction and forum selection clause.
In addition, because Rahman purposefully availed himself to the right to conduct business with Plaintiffs in Georgia under the Franchise Agreement, he transacted business in Georgia within the context of O.C.G.A. § 9-10-91(1). Rahman also had sufficient minimum contacts with Georgia, Int'l Shoe Co. v. Washington , 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and was on notice that he may be sued in Georgia. See World-Wide Volkswagen Corp v. Woodson , 444 U.S. 286, 297, 100 S.Ct. 580, 62 L.Ed.2d 490 (1980) (noting that when a person or entity "purposefully avails itself to the privilege of conducting activities within the forum State ... it has clear notice that it is subject to suit there"). As a result, Rahman is subject to the personal jurisdiction of this Court and his Motion to Dismiss for lack of personal jurisdiction, lack of venue and forum non conveniens is DENIED.
Accordingly, it is hereby ORDERED that Defendants, and all persons acting on their behalf, in concert with, or under their *1332 control, are immediately ENJOINED from:
(a) manufacturing, packaging, distributing, selling, advertising, displaying, or promoting any product or service bearing any of the Church's Chicken Marks,[3] or any colorable imitation thereof at the Restaurant;
(b) displaying or using any of the Church's Chicken Marks, or any colorable imitation thereof (including without limitation the logo that is currently displayed at the Restaurant), to advertise or promote the sale of, or to identify, the Restaurant, or any product or service provided therein;
(c) making in any manner whatsoever any statement or representation, or performing any act, likely to lead members of the public to believe that Defendants, the Restaurant and the products and services provided therein, are in any manner, directly or indirectly, associated, affiliated, or connected with, or licensed, sponsored, authorized, or approved by Plaintiffs;
(d) violating the non-competition provisions of the Franchise Agreement; and
(e) taking any action in violation of the Post-Expiration Obligations[4] in the Franchise Agreement.
It is FURTHER ORDERED that Defendants, and all persons acting on their behalf, in concert with, or under their control, shall immediately:
(a) remove, recall and deliver up to Plaintiffs all signs, banners, labeling, packaging, advertising, promotional, display, and point-of-purchase materials which bear, or make reference to, any of the Church's Chicken Marks, or any colorable imitation of the Church's Chicken Marks from the Restaurant;
(b) recall and deliver up to Plaintiffs all copies and editions of the Manual that are in their actual or constructive, direct or indirect, possession, custody or control at the Restaurant, including all supplements and addenda thereto, and all other materials containing restaurant operating instructions, restaurant business practices, or plans of Plaintiffs; and
(c) cease unlawfully using or disclosing Plaintiffs' confidential information, including confidential business information and trade secrets, Manual, recipes, product specifications, information, techniques and know-how.
It is FURTHER ORDERED that within 30 days of entry of this Order that Defendants file with the Court a report, in writing and under oath, setting forth in detail the manner in which Defendants have complied with this Order.
It is FURTHER ORDERED that this Injunction shall remain in full force and effect until further order of this Court.
IT IS SO ORDERED. December 13, 2017.

The term "Marks" carries the same definition as that term is defined in Plaintiffs' First Amended Petition.

The term "Post-Expiration Obligations" carries the same definition as that term is defined in Plaintiffs' First Amended Petition.